## ASIATIC PETROLEUM CO. (DELAWARE), LIMITED, v. COMMISSIONER OF INTERNAL REVENUE.*

No. 472.

Circuit Court of Appeals, Second Circuit.

Aug. 16, 1935.

*Writ of certiorari denied 56 S. Ct. 3C9, 80 L. Ed. ——.

For the opinion below, see 31 B. T. A. 1152.

Cravath, de Gersdorff, Swaine & Wood, of New York City (William D. Whitney, M. T. Moore, Joseph C. White, and George G. Tyler, all of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Lucius A. Buck, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This case was heard by the Board upon stipulated facts, which included a stipulation that, if the Commissioner was correct in applying section 45 of the Revenue Act of 1928 (45 Stat. 806, 26 USCA § 2045), there was a deficiency of $303,083 in the petitioner's tax for the year 1929; otherwise there was no deficiency. The Board sustained the Commissioner.

The agreed facts are these: Two foreign corporations, one organized under the laws of the Netherlands (called Royal Dutch) and the other under the laws of Great Britain (called British Shell), owned, respectively, 60 and 40 per cent. of the stock of another Netherlands corporation (called Bataafsche) and of the petitioner (hereafter referred to as Asiatic). Neither Royal Dutch nor British Shell has ever done any business in the United States other than holding stock of domestic corporations. Bataafsche deals in petroleum products in various parts of the world other than the United States. Asiatic is a Delaware corporation, organized in 1920, and has always been a holding company engaged in holding the stocks of various subsidiary corporations. For the year 1929 Asiatic filed a consolidated return, for itself and its subsidiaries, which omitted to include any profit from the transactions now to be described. Asiatic owned 39,997 shares of a Louisiana corporation (referred to as Norco), and on January 8, 1929, contracted in London, England, to sell said Norco shares to Bataafsche for the price of $3,999,700, which was the cost basis of the stock to Asiatic. Payment was made in London, and on the following day, January 9, 1929, the stock certificates, properly indorsed in blank, were delivered to a representative of Bataafsche in Montreal, Canada. On the same date Bataafsche sold and delivered in Montreal said Norco shares to a Delaware corporation known as Shell Union for the sum of $6,755,000. No part of the purchase price paid by Shell Union was ever received by Asiatic. Bataafsche owned 59 per cent. or more of the voting stock of Shell Union. On May 3, 1919, Shell Union sold said Norco shares to Shell Petroleum Corporation of St. Louis, a Virginia corporation whose stock was wholly owned by Shell Union, for $6,755,000. Thereupon Shell Petroleum took over the assets and liabilities of Norco and caused the latter to be dissolved before the end of 1929. The profit of $2,755,300 realized by Bataafsche upon its sale of the Norco shares to Shell Union was allocated by the Commissioner to Asiatic by applying to the foregoing facts the provisions of section 45 of the Revenue Act of 1928, 26 USCA § 2045. This produced the deficiency complained of, which the Board of Tax Appeals confirmed.

The statute under which the Commissioner purported to act reads as follows:

"Sec. 45. *Allocation of Income and Deductions.* In any case of two or more

trades or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such trades or businesses."

The petitioner contends that section 45, properly interpreted, is inapplicable to the facts of this case, and, if applied, is unconstitutional.

■ Section 45 authorizes the Commissioner to make an allocation of gross income among businesses controlled by the same interests in order (1) to prevent evasion of taxes, or (2) clearly to reflect the income of any of such businesses. The substance of the two contemporaneous sales above described was to transfer the Norco stock to Shell Union at a price of $6,755,000, and it can scarcely be doubted that the intermediate sale to Bataafsche, made abroad and at the cost basis of the stock to Asiatic, was devised for the purpose of avoiding income taxes on the profit of $2,755,300, to which Asiatic would concededly have been subject had it sold direct to Shell Union at the price which the latter paid. Since the parent corporations had the same stock ownership in both Asiatic and Bataafsche, it would be a matter of indifference to the beneficial owners of the profit whether it was realized by the one subsidiary or the other. But the petitioner contends that, assuming a purpose to avoid taxes, the Commissioner cannot justify his allocation to Asiatic of the profit realized by Bataafsche on the ground of preventing an "evasion of taxes," because that phrase is not the same as avoidance of taxes. It is argued that "avoidance" connotes escape from taxation by avoidance of the receipt of income, while "evasion" connotes an effort to escape taxation by · one who has received taxable income, and is conduct criminally punishable under section 146 (b) of the Revenue Act of 1928, 26 USCA § 2146 (b). By selling to Bataafsche at cost what it might have sold to Shell Union at a profit, Asiatic avoided the receipt of income; hence, it is urged, it did not evade any tax, and section 45 is inapplicable on the basis of tax evasion. We cannot accept so narrow a construction. Asiatic had an actual profit (excess of value over cost) before the sale to Bataafsche, though as yet unrealized for income taxation. The phrase "evasion of taxes" is broad enough to include the avoidance of the realization for taxation of such a profit through its transfer to another branch of the same business enterprise in a way which only changes its place in the business set up. That such was the meaning ascribed to it during the progress of the bill through Congress is evident from the committee reports which explain that evasion may be attempted "by the shifting of profits, the making of fictitious sales, and other methods frequently adopted for the purpose of 'milking.'" H. Rep. No. 2, 70th Cong., 1st Sess., p. 16; S. Rep. No. 960, 70th Cong., 1st Sess., p. 24. See, also, 69 Cong. Rec. pt. 2, p. 1068.

■ Section 45, although it has no exact counterpart in earlier legislation, is based on the consolidated return provisions of section 240 (d) of the Revenue Acts of 1921 (42 Stat. 260) and 1924, 26 USCA § 993 note, and section 240 (f) of the Revenue Act of 1926, 26 USCA § 993 (f). Upon the fact that the committee reports explaining section 240 (d) of the 1921 Act (H. Rep. No. 350, 67th Cong., 1st Sess., p. 14; S. Rep. No. 275, 67th Cong., 1st Sess., p. 20) refer to foreign subsidiaries as a frequently · employed method of "milking" the parent company or otherwise improperly manipulating its financial accounts and that the committee reports regarding section 45 also mention "milking," the petitioner bases an argument that the "milking" at which the legislation was aimed, is only that of a domestic parent by a ⸗foreign subsidiary, so that section 45 has no application when the parent is a foreign corporation or, as in the present case, two such corporations. But we see nothing in the language or in the purpose of the statute to justify giving it so restricted a meaning. An evasion or avoidance of taxes may be accomplished when a foreign subsidiary "milks" a domestic subsidiary of the common foreign parent as well as when it "milks" a domestic parent. The statute is designed to frustrate the one abuse no less than the other.

A more substantial contention with respect to interpreting section 45 turns on the meaning of the words "gross income." The Commissioner is authorized to allocate gross income among trades or businesses under the specified statutory conditions. If there is no gross income, there is nothing to allocate. It is argued that the profit realized by Bataafsche on the sale of the Norco stock to Shell Union was not "gross income" within the definition of that term contained in the Revenue Act of 1928, since section 231 (a), 26 USCA § 2231 (a) provides that "In the case of a foreign corporation gross income includes only the gross income from sources within the United States," and under section 119 (e), 26 USCA § 2119 (e), Bataafsche's profit was income from sources without the United States. It is true that for the purpose of imposing taxes on a foreign corporation "gross income" has a more limited meaning than is given it in the general definition contained in section 22, 26 USCA § 2022, and it is likewise true that Bataafsche realized no taxable profit. But Bataafsche did realize a profit which falls within the general definition of gross income in section 22. Bearing in mind the abuses at which section 45 was directed, we agree with the Board that "gross income" should be given its broader meaning whether the income to be allocated be received by a foreign or a domestic corporation. Section 45 is not concerned with whether the recipient of gross income is a corporation or whether, if it be, it is a domestic or a foreign corporation. It speaks in terms of two or more trades or businesses, "whether or not incorporated" and "whether or not organized in the United States," and the implication is clear that "gross income" means the same whether it be received by a business organized within or without the United States. The legislative purpose was to prevent the avoidance of taxes or the distortion of income by the shifting of profits from one business to another by means of such transactions as this record presents.

The final argument against the applicability of the statute is that Asiatic is purely a holding company and so not engaged in a trade or business. This is based upon the stipulation in the agreed statement of facts that "The petitioner is and always has been a holding company, engaged in holding the stocks of various subsidiary corporations." It is not clear from this language that Asiatic is solely a holding company and does nothing else. In its 1929 return its "kind of business" is stated to be "petroleum and petroleum products." But if it be assumed that it was purely a holding company and conducted the business of dealing in petroleum products solely through subsidiaries, we think this was a "business" within the meaning of section 45. It can hardly be thought that Congress intended to leave holding companies free to avoid taxes and subjected only their subsidiaries to the terms of the statute. The cases relied upon by the petitioner are quite beside the mark, since they deal with statutes of very different import.

For the foregoing reasons we are satisfied that section 45 is applicable to the facts at bar. It remains to consider the contention that, so applied, it is unconstitutional.

The argument is that the profit was Bataafsche's, and that to allocate it to Asiatic is nothing more than an effort to tax one person on the income of another, which results in a deprivation of property without due process of law. Hoeper v. Tax Commission, 284 U. S. 206, 52 S. Ct. 120, 76 L. Ed. 248; Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772. The Hoeper Case held invalid a state statute which required the income of the wife to be added to the income of the husband and taxed the latter upon the aggregate income. The Heiner Case held invalid a provision of the federal estate tax law which requires that gifts by the decedent within two years of his death must be deemed transfers made in contemplation of death. This was unconstitutional because in effect it measured the decedent's estate tax by the property of his donee. We do not regard either case as apposite to the situation now before the court. Here Asiatic had potential income, the value in excess of cost of the Norco stock. True, it was not taxable income until realized in money. In order to avoid the receipt by Asiatic of taxable income, the potential income was transferred without consideration to Bataafsche, a foreign corporation, in whose hands the realized profit would not be taxable. The transferee and the transferor had the same stockholders, so that it was immaterial

238

to the beneficial owners of the potential income whether it was realized by one business or the other. Legislation which declares that under such circumstances the transferor shall be taxed just as though the potential income had been realized by it does not, in our opinion, deprive the taxpayer of property without due process of law. Such a statute seems as appropriate a provision for enforcing a general scheme of lawful taxation, and no more difficult to sustain against constitutional attack, than the legislation under consideration in Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362. It does not measure the tax of one person by the income of another, as in Hoeper v. Tax Commission, supra; rather, it looks through form to reality, and recognizes that the appreciation in value during the transferor's ownership of the property (when realized for the benefit of the real owners, the stockholders) should be ascribed to the transferor rather than to the transferee. Even without such a statute as section 45, many cases have gone very far in disregarding formal transfers introduced into corporate transactions for the purpose of escaping taxation. See S. A. MacQueen Co. v. Commissioner, 67 F.(2d) 857 (C. C. A. 3); Pennsylvania Indemnity Co. v. Commissioner, 77 F.(2d) 92 (C. C. A. 3); Helvering v. General Utilities & Operating Co., 74 F.(2d) 972 (C. C. A. 4); Taylor Oil & Gas Co. v. Commissioner, 47 F.(2d) 108 (C. C. A. 5); Hellebush v. Commissioner, 65 F.(2d) 902 (C. C. A. 6). If anticipatory arrangements intended to circumvent taxes may be disregarded by the courts without the aid of statutory authority, a statute authorizing the Commissioner to disregard them under similar circumstances cannot be unconstitutional. It is true, as the Supreme Court recently stated in Gregory v. Helvering, 293 U. S. 465, 55 S. Ct. 266, 267, 79 L. Ed. 596, 97 A. L. R. 1355, that a taxpayer is privileged "to decrease the amount of what would otherwise be his taxes, or altogether avoid them, by means which the law permits." But there is no suggestion in that opinion, or in the authorities upon which it relies, that a statute would be unconstitutional which took away this privilege. At least under the conditions specified in section 45 we are satisfied that it may be taken away.

Order affirmed.