POLAK'S FRUTAL WORKS, INC., ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30131, 46219, 46220, 46221, 46222. Promulgated March 19, 1954.

*I. Herman Sher, Esq.,* for the petitioners.

*Rigmor O. Carlsen, Esq.,* and *William G. O'Neil, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Polak's Frutal Works, Inc., Docket No. 46219; Jacob Polak, Docket No. 46220; Jacob Polak and Eliseba Polak, Husband and Wife, Docket No. 46221; and Emilie Polak Parser, Docket No. 46222.

## OPINION.

VAN FOSSAN, *Judge:* The first question for decision is whether respondent is correct in his determination that the incomes respectively reported by Export and its successor, Export, Inc., in the years involved are attributable to Frutal.

Respondent first takes the position that the two entities should be entirely disregarded for tax purposes and that the incomes reported by each, after proper adjustment to the calendar year basis, should be included within Frutal's taxable income under the broad provisions of section 22 (a), Internal Revenue Code. In the alternative, respondent argues that should the entities be recognized for tax purposes, then and in that event, certain portions of the incomes of each, as

computed by him, are properly to be allocated to Frutal pursuant to section 45 of the Code.

As for respondent's first contention, our finding above that the two export organizations were separate entities from Frutal for tax purposes is dispositive thereof. No extended discussion of the matter is deemed necessary. Suffice it to say that the export business which had shortly before been transferred from N. V. to Frutal was removed from the latter to be carried on as a separate enterprise by Export and later Export, Inc., for what appeared to Frutal's directors at that time to be sound and sufficient business reasons.

Among such reasons was an ardent desire to free the export business as much as possible from the restrictive wartime control which was then being exercised by the Dutch Government over N. V. and Frutal. Under the organizational setup that then existed, all dividends declared by Frutal would be paid to N. V., thereupon be frozen by the Dutch Government, thereby denying the members of the Polak families any return on their investment. There was also constant concern over the security of such investment from possible confiscation. Furthermore, at the time of the separation of the export and domestic sales, there existed the firm intention to take the export business back to Holland and again operate it from there when that became possible. Finally, but not the least important reason was the desire to give the younger members of the two families an interest and stake in the business to forestall a threatened break and establishment thereby of a separate and competing business.

Whether or not the Dutch Government was in any position to enforce fully the control which it claimed to hold over Frutal as against a concerted and determined opposition of the parties involved is beside the point. The fact is that such parties felt that the business was subject to such control. With this thought in mind they took the step which they also thought, whether rightly or wrongly, would free them, at least to some extent, therefrom. That such step was not influenced by any objectionable tax evasion scheme or any improper purpose is clearly established in the evidence. Moreover, the motive of tax avoidance for entering into a transaction or adopting a particular form of business has never been held to be sufficient, in and of itself, as a basis for liability unless the transaction first establishes such liability without it. *John Junker Spencer*, 19 T. C. 727; see *Chisholm* v. *Commissioner*, 79 F. 2d 14, in which Judge Learned Hand put at rest many of the bugaboos which the respondent sees emanating from the present transaction. Thus, a taxpayer is free to choose the type of organization or form in which he will cast his business activities to achieve a desired business or tax result. *John Junker Spencer, supra; Higgins* v. *Smith*, 308 U. S. 473. He is not required to adopt or continue with

that form of organization which results in the maximum tax upon business income. *Meldrum & Fewsmith, Inc.*, 20 T. C. 790. *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436. Furthermore, if a taxpayer actually carries on business in the form chosen, the tax collector may not deprive him of the incidental tax benefits flowing therefrom, unless it first be found to be but a fiction or a sham. *John Junker Spencer, supra; Higgins* v. *Smith, supra; Rhode Island Hospital Trust Co.*, 7 T. C. 211. We do not and could not make such finding on the present record. Our view of the evidence at hand leaves us with no doubt as to the bona fides of Export, the partnership, or of Export, Inc., as taxable entities separate from their common progenitor, Frutal. Compare *Chelsea Products, Inc.*, 16 T. C. 840 with *Friedlander Corporation*, 19 T. C. 1197. In the former case, the taxpayer, a manufacturer of fans and blowers, which, for several years had sold its products through its own officers and agents, organized three sales companies to sell its products in three separate geographical areas. The stockholders of these sales companies were essentially the same as the stockholders of the taxpayer. Thereafter the sales companies acted as sales agents for petitioner and the income thereof was derived from sales of products manufactured by the taxpayer. That the formation of the sales companies was motivated by good business reasons and that they were not mere shams for the sake of gaining a tax advantage was borne out by the evidence adduced therein.

In the *Friedlander* case, *supra*, the petitioner therein, prior to taxable years involved, had operated a general merchandise business in a number of towns in Georgia and Alabama. In 1943, petitioner's president and vice president, along with their respective wives, formed a partnership with the 3 sons of the former, who were at that time serving in the armed services, for the purpose of acquiring and operating 6 of the 9 stores being conducted by petitioner. Reasons given for the formation of the partnership were to give the sons a business which they could manage and control upon their return from military service, to put to use and develop the ideas and business capabilities of the sons, and to provide a satisfactory means of settling an unhealthy dispute between the sons and petitioner's vice president with regard to internal policy. The alleged purposes, however, were not supported by the facts of record. To the contrary, the evidence showed and we found as a fact that the partnership was a sham created for the sole purpose of siphoning off the profits of petitioner with resulting tax benefits being the ultimate goal. Here the evidence shows the reasons for the organization of the export entities to have been legitimate and bona fide business purposes.

Each case must be decided on its own facts. The facts and principles in the instant case are more nearly analogous to those in the

*Chelsea* case, *supra*, and on the authority thereof we hold that the respective incomes of Export and Export, Inc., may not be attributed to Frutal for any of the years involved. Respondent's determination to the contrary is, therefore, reversed. Cf. also *Grenada Industries, Inc.*, 17 T. C. 231, affd. 202 F. 2d 873.

Section 45 of the Code, on which respondent's alternative argument is based, provides, as follows:

SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances, between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

On the present record it is manifest that the export entities and Frutal were "* * * owned or controlled directly or indirectly by the same interests * * *" within the meaning of the statute invoked. See *Grenada Industries, Inc., supra*, wherein it was said, *inter alia:*

The existence of the requisite common ownership or control is not sufficient, however, to justify the application of section 45. The Commissioner may make a distribution, apportionment or allocation under section 45 only "if he determines [that it] is necessary in order to prevent evasion of taxes or clearly to reflect the income of such [owned or controlled] organizations, trades, or businesses." The purpose of section 45 is not to punish the mere existence of common control or ownership, but to assist in preventing distortion of income and evasion of taxes through the exercise of that control or ownership. It is where there is a shifting or deflection of income from one controlled unit to another that the Commissioner is authorized under section 45 to act to right the balance and to keep tax collections unimpaired. *Asiatic Petroleum Co.* v. *Commissioner* (C. A. 2), 79 F. 2d 234, 236, certiorari denied 296 U. S. 645; Treas. Regs. 111, sec. 29.45–1; cf. *Gordon Can Co.*, 29 B. T. A. 272.

In determining whether, in the instant case, income really earned by Frutal was shifted or diverted to the Export entities, one helpful guide is whether the charges made by Frutal thereto for its services were unreasonably low and hence disproportionate to the value thereof. *Grenada Industries, Inc., supra.*

It is respondent's position that the prices actually charged by Frutal were unreasonably low and that in adjusting these prices to reasonable ones, he has arrived at the figures, here advocated by him, which result in restoration of gross profits enjoyed by Frutal prior to the formation of Export. Frutal, on the other hand, maintains that its charges to Export and later Export, Inc., were fair and reasonable. Both parties indulge in a manipulation of various figures

to support their respective views, and to show the absurdity of those advanced by the opposite party. The evidence before us supports the view held by Frutal. All probative evidence of record is to the effect that Frutal received from the export entities what would be considered in the trade of which it was a part as fair and reasonable prices for its services. Respondent offers no countervailing evidence. Nor does he say what, in his opinion, would constitute such fair and reasonable price. Rather, he would arbitrarily allocate each year whatever percentage of income of the export entity involved is sufficient to bring Frutal's earnings to approximately the level they held in the years prior to the organization of Export.

As was said in *Seminole Flavor Co.*, 4 T. C. 1215, 1235: "Actually, the principal force behind all of the Commissioner's argument is that the petitioner could as well have done all the things that the partnership did and reaped all of the earnings of the related enterprises. Since petitioner could have had the earnings, the Commissioner would make it so by exercising the authority conferred by section 45 * * *" Such argument we there rejected. See also *Miles-Conley Co.*, 10 T. C. 754. Moreover, a similar argument was disposed of in *Koppers Co.*, 2 T. C. 152, with the following language, which is also apposite here after due allowance is made for factual differences:

The answer, however, to this argument is that petitioner did not do this. It was free to and did use its funds for its own purposes. It was under no obligation to so arrange its affairs and those of its subsidiary as to result in a maximum tax burden. On the other hand, it had a clear right by such a real transaction to reduce that burden. *Helvering* v. *Gregory*, 293 U. S. 465; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; *Commissioner* v. *Gilmore Estate*, 130 Fed. (2d) 791; *Coca-Cola Co.* v. *United States*, 47 Fed. Supp. 109; *Commissioner* v. *Kolb*, 100 Fed. (2d) 920.

On the record made, we hold that section 45 is inapplicable in the instant situation. Respondent's proposed allocation thereunder is, accordingly, set aside.

Inasmuch as our disposition of the foregoing issue is based on the weight of evidence adduced in this record, the question raised by both parties as to the burden of proof becomes academic and requires no comment.

The next item is the question of salaries. That is to say, whether respondent is correct in his disallowance, as excessive, of part or all of the amounts claimed by Frutal to have been paid to the various parties involved. It is Frutal's position that the salaries in question were not excessive. It has introduced evidence specifically bearing upon the reasonableness of the compensation paid to Jacob, Frits, Bernard, Ernest, and Micheels during the years involved. Respondent has failed to go forward with any evidence in refutation. Consequently, since no reason appears to discount the testimony, we have

no alternative to holding for Frutal on this point. The record, however, is completely devoid of any evidence touching upon the payments made to Emilie during the taxable years. Respondent's determination with regard thereto is sustained.

The original pleadings contain a fourth issue—whether or not the distributions made by the Export entities during the years involved are includible in the gross incomes of Jacob, Eliseba, and Emilie as constituting constructive dividends received from Frutal and N. V. However, the premise upon which such question was based has been effectively resolved by our holdings herein with regard to the Export entities, and there remains no need for any further consideration thereof.

*Decisions will be entered under Rule 50.*