OPINION. Black, Judge: Respondent has determined that the entire rental income reported by the partnership is taxable to the four corporate petitioners under the provisions of section 61 of the 1954 Code on the grounds that the corporations retained ownership, dominion, and control over the rental properties, which properties were the source of the income.[2] Respondent primarily contends that either the partnership is not bona fide and is a sham created to divert corporate income or that the lease arrangements between the partnership and the corporate petitioners were nothing more than a tax device intended to split the corporate income. In the alternative, respondent contends that he can allocate or apportion the income to the petitioners under the authority of section 482 of the 1954 Code even if the lease arrangements between the partnership and the corporations are recognized.[3] Petitioners contend that the partnership had a legitimate business purpose and that Albee Company was created to continue the activities of the J & W Altshuler partnership after the death of William Altshuler on December 27, 1954. J & W Altshuler partnership had conducted a similar coordinated management program for most of the same rental properties owned by the same parties. Issue 1. After a careful examination of the record presented here we believe that the weight of the evidence establishes that Albee Company was created for legitimate business reasons and that it cannot be regarded as a sham for tax purposes. As we have said, Albee Company was formed in 1955 as a successor to the J & W Altshuler partnership which had been in existence since 1919. Both J & W Altshuler and Albee Company performed valid managerial services in the operation and maintenance of the rental properties leased to them. The centralized management of all these properties permitted a high degree of efficiency in the handling of the expenses and the purchase of supplies and equipment for all the properties. It is very well established that a taxpayer has the right to choose the form of organization that will achieve a desired business result, Polak's Frutal Works, Inc., 21 T.C. 953 (1954), and we are convinced that Albee Company not only performed real and valuable services for the petitioners but was able through centralized management and control to effect savings that the corporate petitioners perhaps would not have been able to achieve operating independently. We hold that the partnership was not a sham. Nor do we think that the lease arrangements were tax devices intended to split corporate income. Thus we decide Issue 1 in favor of the petitioners. Issue 8. Respondent argues in the alternative, and he has so determined in his deficiency notice, that even if we find that the partnership and/or the lease arrangements did not constitute a sham, the rental income is nevertheless taxable to the petitioners under the authority of section 482 of the 1954 Code. Section 482 of the 1954 Code is essentially the same as section 45 of the 1939 Code. Of course, it is clear that petitioners and the partnership of Albee Company were owned by the same interests. Thus that part of section 482 of the 1954 Code is met. But common control alone is not sufficient to justify the application of this section, Grenada Industries, Inc., 17 T.C. 231, affd. 202 F. 2d 873 (C.A. 5, 1953). It is only where there is a shifting of income from one controlled unit to another that any allocation is justified under section 482. Petitioners have proved to our satisfaction that there was none in the instant case. We think they have borne their burden of proof in this respect. It seems to us that the actual basis for the respondent’s action was his theory that the partnership or the lease arrangements were sliam devices, which contentions we have rejected. In view of the fact that the respondent’s proposed reallocation would do away with all partnership income, we believe this action to be entirely unreasonable and arbitrary, Seminole Rock & Sand Co., 19 T.C. 259 (1952). As was said in Seminole Flavor Co., 4 T.C. 1215, 1235 (1945) : Actually, the principal force behind all of the Commissioner’s argument is that the petitioner could as well have done all the things that the partnership did and reaped all of the earnings of the related enterprises. Since petitioner could have had the earnings, the Commissioner would make it so by exercising the authority conferred by section 45. * * * Such argument we there rejected. Accordingly, we do not agree with respondent’s alternative contention. For the reasons stated herein we set aside his proposed reallocation under section 482, I.R.C. 1954. Reviewed by the Court. Decisions will be entered for the petitioners. Withet, J., dissents. SBC. 61. GROSS INCOME DEFINED. (a) General Definitions. — Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: ******* (5) Rents; SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS. In any casa of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the united States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances, between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the Income of any of such organizations, trades, or businesses.