440 F.2d 1
 Raymond A. and Joan BIGGS, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Raymond A. and Joan BIGGS, Petitioners-Cross-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Cross-Appellant.
 No. 20309.
 No. 20310.
 No. 20311.
 United States Court of Appeals, Sixth Circuit.
 March 30, 1971.
 
 James F. Shea, and Frederick W. Heath, Birmingham, Mich., for Biggs; Frederick Wm. Heath, Shea, Shea, Heath & Solner, Birmingham, Mich., on brief.
 Robert D. Bickel, Dept. of Justice, Washington, D. C., for commissioner; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, William Massar, Attys., Dept. of Justice, Washington, D. C., on brief.
 Before BROOKS and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.
 BROOKS, Circuit Judge.
 
 
 1
 Taxpayer, an osteopathic physician and his wife, has appealed the Tax Court's determination of his tax liabilities for an eleven year period covering 1950-1957, 1959-1961. The Commissioner of Internal Revenue, following an examination of taxpayer's income tax returns and supporting records for the taxable years in question, assessed a number of tax deficiencies and penalties based upon alleged understatement of gross income and overstatement of allowable deductions.[1] The Commissioner's assessments were appealed to the Tax Court which reviewed taxpayer's records, took testimony and then allowed and disallowed certain of the assessed deficiencies and penalties.[2] See, Biggs v. Commissioner P-H Memo T.C. pp. 68, 240 (1968). The Commissioner has also appealed a portion of the Tax Court's decision.[3]
 
 
 2
 The investigation of taxpayer's income tax liabilities began in 1958 and, because of the enormity of potential liability and the inadequacy of taxpayer's records, the investigation took a tremendous amount of time. As a result, numerous consent agreements extending the periods of limitation for assessment were executed. The parties were able to settle upon a figure of omissions from gross income which resulted in a reduction from about $700,000 in alleged omissions claimed by the Commissioner to one of about $200,000. This appeal is principally concerned with the dispute over certain deductions from income claimed by the taxpayer but disallowed by the Tax Court. The Commissioner challenged $1,300,000 of taxpayer's claimed deductions and approximately $700,000 of these deductions remained in controversy before the Tax Court. About equal portions of this amount were questioned by the Commissioner as to the fact of expenditure, the reasonableness of the amounts, and to the purported business purpose of the expenses.
 
 
 3
 The first issue raised is that the taxpayer's agreement to permit extending the statute of limitations for assessment was vitiated because 1.) the deficiency notices were so vague so as not to apprise the taxpayer of the nature of the deficiencies, or 2.) the Commissioner acted capriciously in withholding essential portions of its determination. Additionally, taxpayer contends the Commissioner's "arbitrary and capricious" conduct in denying access to alleged essential portions of the determination violated due process of law. Neither contention has merit.
 
 
 4
 The deficiency notices in this case not only listed the deficiencies determined by the Commissioner but affixed to the notices were statements itemizing each adjustment to income either by way of increase in gross income or disallowance of deductions. There was also an explanation detailing the reason for each adjustment and a computation of the deficiency and penalties. The notices in this case were more than sufficient to appraise taxpayer of the Commissioner's intent to assess deficiencies. Commissioner of Internal Revenue v. Stewart, 186 F.2d 239 (6th Cir. 1951); Barnes v. Commissioner of Internal Revenue, 408 F.2d 65, 68 (7th Cir. 1969); cert. denied 396 U.S. 836, 90 S.Ct. 94, 24 L.Ed.2d 86.
 
 
 5
 Equally without merit is taxpayer's argument that the Commissioner's conduct allegedly denying him essential portions of the deficiency determination voided the consent agreements to extend the period for assessments and violated due process. It must first be observed that the contention that a consent agreement to extend the statute of limitations for deficiency assessments may be voided by subsequent conduct of the Commissioner is wholly without authoritative support. However, even if such a rule of law existed this case would not fall within its purview. Taxpayer points to the two years which elapsed between receipt of the deficiency notices and copies of the investigative reports upon which the deficiencies were based as showing the Commissioner capriciously denied them access to information needed to prepare a defense. It cannot be said that the two years which elapsed were the result of capricious conduct or an unreasonable delay. Taxpayers had ample time to petition the Tax Court to require the Commissioner to provide additional information, but this course of action was never pursued. If fault is to be assigned for the two year delay, it must rest with the taxpayer.
 
 
 6
 The next thirty issues raised present the single question of whether taxpayer sustained the burden of proof as to the allowability of the numerous claimed business and personal deductions. The Commissioner's challenges to the deductions were, in appropriate instances, directed at the question of actual expenditure, the business purposes of the expenses, and the reasonableness of the amounts.[4] It is axiomatic that Tax Court proceedings are tried de novo and a taxpayer has the burden of coming forward with evidence showing that a determination of tax deficiencies is erroneous. 26 U.S.C. § 7453; Tax Court Rule 31. And factual determinations made by the Tax Court must not be disturbed unless clearly erroneous. 26 U. S.C. § 7482(a); Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Southeastern Canteen Company v. Commissioner of Internal Revenue, 410 F.2d 615, 622 (6th Cir. 1969), cert. denied, 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84; Walters v. Commissioner of Internal Revenue, 383 F.2d 922 (6th Cir. 1967). Review of the record indicates the Tax Court was admirably fair and legally correct in its conclusions on the issue of deductions. Many of the business deductions claimed by the taxpayer had no more support as to their business related purpose than the taxpayer's statement that, "If I deducted it, it was for business." Several identical deductions were claimed twice under separate categories and, with respect to others, there was a conspicuous lack of proof of actual expenditure. The Tax Court's determinations were not clearly erroneous.
 
 
 7
 Taxpayer next contends the record does not support the imposition of fraud penalties for the tax years 1950-1957 or the negligence penalties for the tax years 1959-1961.[5] It is clear that the Commissioner has the burden of proving by clear and convincing evidence that a taxpayer fraudulently intended to evade taxes. See, Drieborg v. Commissioner of Internal Revenue, 225 F.2d 216, 218 (6th Cir. 1955); Hawkins v. Commissioner of Internal Revenue, 234 F.2d 359, 360 (6th Cir. 1956). The mere fact that a taxpayer is unable to prove that the Commissioner's deficiency assessments are erroneous, even if a number of taxable years are involved, is not sufficient to sustain the burden of proving fraud. However, as in other factual matters, the Tax Court has the distinct advantage of hearing live testimony by which to gauge credibility, and its findings should not be upset unless clearly erroneous. Southeastern Canteen Company v. Commissioner of Internal Revenue, supra; Walters v. Commissioner of Internal Revenue, supra; Harber v. Commissioner of Internal Revenue, 249 F.2d 143, 144 (6th Cir. 1957). Obviously, tax fraud is never, or at least rarely, admitted but direct circumstantial evidence can make a case of alleged tax fraud so strong that no other conclusion can be reached. This is such a case.
 
 
 8
 Dr. Biggs was an intelligent man well versed in the ways of business. While he employed accountants to prepare his returns the Tax Court found, and it is apparent from the record, that he "made the determinations as to what income was to be reported and what deductions were to be taken." This is not a case where the taxpayer delegated the responsibility for keeping books and making decisions on what should be included in gross income and what should be deducted to other individuals. See, Wiseley v. Commissioner of Internal Revenue, 185 F.2d 263 (6th Cir. 1950); cf. Drieborg v. Commissioner of Internal Revenue, supra, 225 F.2d at 219.
 
 
 9
 Taxpayer argues the Tax Court erred in finding the existence of fraud by having considered the fact that large portions of alleged understatements in gross income were settled by stipulation or consent agreements. These consent agreements provided, as is usually the case, that "the Court shall not infer the existence or nonexistence of fraud for the taxable years 1950 through 1957 or negligence for the taxable years 1959 through 1961 from the settlement of certain issues in this cause." While the fact of settlement per se cannot, under these agreements, be used as proof of fraud, it is not true that the agreements precluded a consideration of whether a taxpayer consciously and with intent to defraud either understated income or claimed a deduction ultimately settled by stipulation. In any event, imposition of fraud penalties for a taxable year only requires that any one item, an understatement of income or a claimed deduction, was the product of a fraudulent intent to evade taxes. Webb v. Commissioner of Internal Revenue, 394 F.2d 366, 378 (5th Cir. 1968). And, in the present case, we are convinced that taxpayer's consistent resolution of questionable business deductions in his favor, the excessiveness of these deductions, the duplicate claiming of a single allowable deduction under separate categories, and the claiming of deductions clearly unallowable was "clear and convincing" evidence of fraud.
 
 
 10
 Taxpayer's attempt to analogize this case to that of Wiseley v. Commissioner of Internal Revenue, supra, is without merit. The similarities between the facts in Wiseley and here end with the recognition that in both cases the taxpayer worked long hours. In Wiseley the taxpayer's understatements in gross income could be directly traced to the inadequacy of his financial assistants. Upon discovery of these understatements, the taxpayer in Wiseley sought competent financial help and voluntarily attempted to rectify the errors by filing amended returns. In the present case, the declaring of income and the claiming of deductions were done by the taxpayer. The professional financial assistance retained by taxpayer was to prepare returns as he instructed. The taxpayer's lack of control and knowledge of his financial matters which was the significant factor in the Wiseley decision does not appear in the record of this case.
 
 
 11
 Taxpayer has also failed to sustain the burden of proof that the negligence penalties assessed against him for tax years 1959-1961 were clearly erroneous. Accordingly, the decision to make those assessments is affirmed.
 
 
 12
 The last issue raised by taxpayer is that he was denied a fair trial because of the alleged prejudice of the Tax Court Judge. The hostility existing between the taxpayer and the Internal Revenue Service in this matter went beyond that which ordinarily arises in tax cases and it was apparent in the proceedings in the Tax Court. However the record does not support taxpayer's allegations that the Tax Court Judge was prejudiced or that taxpayer did not receive a fair trial.
 
 
 13
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Deficiencies and penalties assessed by the Commissioner were as follows:
 Addition
 Addition to tax
 to tax Sec. 294
 Deficiency Sec. 293(b) (d) (1) (A)
Years* In Income Tax 1939 Code 1939 Code

1950 $ 45,367.12 $ 22,683.56 $ 8,187.26
1951 58,365.86 29,182.93 0
1952 93,786.54 46,893.27 0
1953 139,851.66 69,925.83 0

 Addition Addition
 to tax to tax
 Sec. 6653(b) Sec. 6653(a)
 1954 Code 1954 Code

1954 154,874.52 $ 77,437.26
1955 192,511.43 97,755.53
1956 158,389.19 83,626.43
1957 185,285.88 92,642.94
1959 90,556.00 0 $ 4,527.80
1960 109,587.34 0 5,479.37
1961 98,578.61 0 4,928.93
 _____________ ___________ __________
 $1,327,154.15 $520,147.75 $23,123.36

 Total tax liability assessed by Commissioner
 was $1,327,154.15 and penalties
 of $543,271.11.
 
 
 *
 The taxable year 1958 is not in question here
 
 
 [2]
 Deficiencies and penalties as determined by the Tax Court were as follows:
 Addition
 Addition to tax
 to tax Sec. 294
 Deficiency Sec. 293(b) (d) (1) (A)
Years* In Income Tax 1939 Code 1939 Code

1950 $ 24,815.36 $ 12,407.68 $ 6,309.68
1951 45,539.80 22,769.90 0
1952 44,165.12 22,082.56 0
1953 66,045.20 33,022.60 0

 Addition Addition
 to tax to tax
 Sec. 6653(b) Sec. 6653(a)
 1954 Code 1954 Code

1954 57,698.89 $ 28,849.45
1955 71,663.54 37,331.58
1956 81,282.80 45,073.24
1957 65,929.17 32,964.59
1959 64,363.48 0 $ 3,218.17
1960 51,406.35 0 2,570.31
1961 72,481.19 0 3,624.06
 ___________ ___________ __________
 $645,390.90 $234,502.60 $15,722.22

 Total tax liability assessed by the Tax
 Court was $645,390.90 and penalties of
 $250,224.82.
 
 
 *
 The taxable year 1958 is not in question here
 
 
 [3]
 The Commissioner's cross appeal is contingent upon reversal of the Tax Court's determination that certain clinical furniture and fixtures used by taxpayer had a useful life of ten years and not two to three years as taxpayer argues. The Commissioner contends that if the ten year useful life determination is found to be erroneous, then taxpayer's cost basis of these assets must be adjusted downwards and taxpayer realized a taxable gain on the transfer of these assets to the corporation which used the assets. While we have not dealt separately with this particular item in discussing taxpayer's claimed deduction,infra pp. 7-10, the Tax Court's determination of a ten year usefulness is not clearly erroneous. Accordingly, the Commissioner's contingent cross appeal is not reached.
 
 
 [4]
 Apartial topical list of claimed deductions follows:
 
 Business:
 
 
 
 [1]
 ) Secretarial and Other Services and Salaries — disallowed amounts included, in part, salaries paid to Dr. Biggs' wife, sons, daughters and maid
 
 
 [2]
 ) Business Entertainment and Promotion — disallowed amounts included, in part, expenses for various club dues, gifts, hotels and restaurants, and expenses claimed on a converted PT boat purchased by Dr. Biggs for business purposes
 
 
 [3]
 ) Flower Expenses — disallowed amounts included portions of the cost of flowers claimed for business purposes in addition to entertainment and promotion expenses
 
 
 [4]
 ) Depreciation on PT Boat — The Tax Court adjusted amount entirely depreciated over a ten year period and then given to charity claiming charitable contribution
 
 
 [5]
 ) Travel Expenses In Addition to Business Promotion Expenses — disallowed amounts include portions of alleged travel expenses expended for travel in connection with criminal tax evasion charges against Dr. Biggs for taxable years prior to the years here in question, but not shown to be related to defense in the criminal matter
 
 
 [6]
 ) Repairs and Maintenance — disallowed amounts were result of lack of records and the possibility amounts expended were on taxpayer's Florida apartment and private residence
 
 
 [7]
 ) Auto Expenses and Depreciation (Auto) — disallowed amounts were, in part, expenses and depreciation on son's auto allegedly used in father's business
 
 
 [8]
 ) Telephone and Telegraph — disallowed amounts were, in part, a portion of the cost of telephone services in taxpayer's private residence
 
 
 [9]
 ) Depreciation (X-Ray) — disallowed amounts were, in part, a result of not being able to show that machine was purchased in year the deduction was claimed
 
 
 [10]
 ) Surgical Supplies — disallowed amounts were, in part, a portion of claimed expenses that were not verified but claimed to have been purchased with cash
 
 
 [11]
 ) Insurance — disallowed amounts were, in part, for insurance expense claimed on PT boat and automobile insurance for two cars which were not shown to be used in taxpayer's business
 
 
 [12]
 ) Office Supplies and Expenses — disallowed amounts were, in part, for duplication of expenses claimed as Repair and Maintenance Expenses and for the cost of equipment which properly should have been capitalized
 
 
 [13]
 ) Dues and Subscriptions Expenses — disallowed amounts were, in part, payments made by taxpayer to the Detroit Osteopathic Hospital staff assessment loan program, and also claimed as Hospital Fees and Expenses but similarly disallowed
 
 
 [14]
 ) Hospital Fees and Expenses — disallowed amounts were, in part, for payments made to loan program mentioned above in No. 13 and for amounts paid in cash without documented verification
 
 
 [15]
 ) Refunds to Patients — disallowed amounts were for payment to the National Association of Letter Carriers and for a refund paid to a patient where there was no indication that the amount was reflected in gross receipts
 
 
 [16]
 ) Payment to Various Doctors — disallowed amounts were, in part, for loans to certain doctors claimed as expenses and for duplication of the same expense paid but claimed twice
 
 
 [17]
 ) Miscellaneous Business Expenses — disallowed amounts were, in part, for payments to hotels, jewelry and gift shops and to other doctors, several of these disallowed deductions were claimed under other categories or lacked documented verification
 
 
 [18]
 ) Loss From Gas Station and Related Capital Losses on Sale of Station's Equipment — disallowed amounts were, in part, for failure to verify loss on sale of equipment and an adjustment to the basis used to compute the losses from the gas station
 
 
 [19]
 ) Rent — disallowed amounts were, in part, for rent paid by the Hamilton Corporation (a family owned corporation) for a Florida apartment and for a cottage as not having any recognizable business purpose but kept for personal use
 
 
 [20]
 ) Oil Well Loss — disallowed amounts were for an investment in an oil well which allegedly became worthless in one fiscal year when in fact the worthlessness was not verified until the following year
 
 
 [21]
 ) Itemized Deductions:
 A. Legal Fees and Professional Fees — disallowed amounts were, in part, for legal fees incurred in Dr. Biggs' wife's income tax liabilities and not his own.
 B. Contributions — disallowed amounts were, in part, for the charitable contribution of the PT boat valued at a figure in excess of its market value.
 C. Interest — disallowed amounts were for failure to verify payment.
 D. Taxes — disallowed amount was for payment of maid's Social Security taxes and are not deductible.
 E. Miscellaneous — disallowed amounts were, in part, for allegedly uncollectible loan to a doctor where no attempt to collect the loan was made; certain cash expenditures made without verification; loss on a sale of car not used for business; and a casualty loss to a vacation cottage destroyed by fire partially covered by insurance but the total value was claimed as a loss.
 
 
 [5]
 No challenge is made to the assessment of the penalty for tax year 1950 for failure to file a declaration of estimated tax. 26 U.S.C. § 294(d) (1) (A) (I.R.C.1939)