RICHARD M. COOPER AND MARY J. COOPER, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2496-72—2499-72. Filed February 4, 1974.

*R. Paul Sorenson*, for the petitioners.

*Harry Morton Asch*, for the respondent.

SIMPSON, *Judge:* The respondent determined the following deficiencies in the Federal income taxes of the petitioners for the year 1968:

| Docket No. | Petitioners | Deficiency |
|---|---|---|
| 2496–72 | Richard M. Cooper and Mary J. Cooper | $547. 84 |
| 2497–72 | Harry C. Neer and Mary Neer | 989. 82 |
| 2498–72 | W. Albert Johnson and Lulu S. Johnson | 1, 067. 28 |
| 2499–72 | Robert D. Brown and Loretta Maye Brown | 1, 421. 42 |

Certain issues have been conceded by the petitioners in docket Nos. 2497–72 and 2499–72, and the only issue remaining for decision is whether the petitioners may deduct as a loss payments made by them to an alleged joint venture established to provide additional funds to a corporation of which they were the shareholders.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners are Richard M. and Mary J. Cooper (husband and wife), Harry C. and Mary Neer (husband and wife), W. Albert and Lulu S. Johnson (husband and wife), and Robert D. and Loretta Maye Brown (husband and wife). All the petitioners were legal residents of Las Vegas, Nev., at the time the petitions were filed herein. They all filed joint Federal income tax returns for the year 1968 with the Internal Revenue Service Center, Ogden, Utah. Messrs. Cooper, Neer, Johnson, and Brown will be referred to as the petitioners.

---

[1] Cases of the following petitioners are consolidated herewith : Harry C. Neer and Mary Neer, docket No. 2497–72 ; W. Albert Johnson and Lulu S. Johnson, docket No. 2498–72 ; Robert D. Brown and Loretta Maye Brown, docket No. 2499–72.

Each petitioner operated his own company in the food business. On September 22, 1964, the petitioners formed a corporation called the Las Vegas Cold Storage & Warehouse Co. (the corporation), of which each owned 25 percent of the stock. The corporation acquired two buildings located adjacent to each other, each having approximately 20,000 square feet of space. The corporation was formed in part with the idea that one day it would install cold storage facilities, and thereafter, provide storage space for the businesses of the petitioners. The petitioners' food businesses did use some of the space in the corporation's buildings for offices. However, the cold storage equipment was never installed, and the petitioners' food businesses had to use storage space in other buildings.

The corporation was also formed to lease storage space to others. However, one of its buildings remained vacant for several years, and the corporation incurred successive net operating losses, which totaled $38,206 by the end of 1967. The corporation was, therefore, forced to secure additional funds from the petitioners in order to meet expenses, and at one point, it reported outstanding loans by shareholders of $23,338.41.

In 1967, one of the petitioners consulted an attorney to determine whether the funds he supplied the corporation could be claimed as a deduction on his personal income tax return. Thereafter, the attorney prepared an agreement for the petitioners, which was executed by them and which provided:

### JOINT VENTURE AGREEMENT

THIS AGREEMENT, made this 30th day of November, 1967, by and between ROBERT D. BROWN, RICHARD M. COOPER, W. A. JOHNSON and HARRY C. NEER,

WHEREAS, the aforementioned parties have, prior to this date, formed a corporation entitled, LAS VEGAS COLD STORAGE & WAREHOUSE CO., which corporation operates an office building and warehouse company in which the businesses of the aforementioned parties operate from; and

WHEREAS, it is the desire of the parties to pay to the corporation sufficient monies to cover the net operating loss of said corporation as rental payments, thereby indemnifying the corporation from any net operating loss.

Now, THEREFORE, IT IS HEREBY AGREED that each of the parties set forth above shall contribute to the joint venture a sum of money equal to one-fourth (¼th) of the net operating loss of LAS VEGAS COLD STORAGE & WAREHOUSE CO. on or before three (3) months after the loss is determined, as computed on the U.S. Corporation Income Tax Return of said corporation; and

IT IS FURTHER AGREED that said joint venture shall immediately pay to said corporation the monies paid over to said joint venture, as and for additional rental payments.

In Witness Whereof the parties hereto have set their hands the day and year herein first written.

(S)  Robert D. Brown
     ROBERT D. BROWN
(S)  Richard M. Cooper
     RICHARD M. COOPER
(S)  W. A. Johnson
     W. A. JOHNSON
(S)  Harry C. Neer
     HARRY C. NEER

The arrangement will be referred to as a "joint venture" for sake of convenience, without intending to indicate whether, as a matter of law, a joint venture was established by such agreement.

On March 19, 1968, the petitioners, as shareholders of the corporation, met and adopted a resolution to dissolve the corporation within a 12-month period in accordance with a plan of complete liquidation. Thereafter, on April 29, 1968, each petitioner issued a check in the amount of $9,552 payable to "Vegas Warehouse-Joint Venture," and such checks were endorsed over to the order of the corporation. The joint venture did not participate in any other business transaction. By May 30, 1968, the corporation ceased operations, sold the buildings, and distributed the corporate assets to the petitioners.

In its final U.S. Corporation Income Tax Return for the period ending May 30, 1968, the corporation reported the payments received from the joint venture as income attributable to an indemnity payment. The joint venture filed a U.S. Partnership Return of Income, on which it reported that "indemnity" was its principal product or service. It also reported a loss of $38,208 and indicated that the petitioners devoted no time to the joint venture.

On their returns for the year 1968, the petitioners each claimed a deduction of $9,552 attributable to losses incurred by the joint venture, and each reported receipt of $18,393 as the proceeds attributable to the liquidation of the corporation.

In his notices of deficiency, the respondent determined that no loss was incurred by the joint venture in the conduct of a trade or business, and that the payment was in reality a contribution of capital by the petitioners to the corporation.

### OPINION

The corporation apparently needed additional funds, and the petitioners, as its shareholders, decided to supply such funds. If the addi-

tional funds constituted contributions to the capital of the corporation or were loans to the corporation, the petitioners were not entitled to deduct the payments when made. However, the petitioners take the position that they formed a joint venture to supply additional capital to the corporation, that the joint venture incurred a loss, and that as members of the joint venture, they were entitled to deduct such loss. In the alternative, they argue that the funds were supplied the corporation as additional rent for the space occupied by them and that they are entitled to deduct such amounts as rental payments. We must decide whether, for purposes of the Federal income tax, there was a joint venture which incurred losses deductible by its members or whether the petitioners have established that they are entitled to deduct the payments as rental expenses.

We have considered the arguments of both parties and the relevant evidence in the record, and on the basis of such consideration, we hold that the so-called joint venture was created for no business purpose and carried on no business activity. It was merely a device to shift a deduction from a corporation to its shareholders. Accordingly, it must be disregarded for purposes of the Federal income tax.

There is no doubt that a taxpayer has the legal right to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits. *Gregory* v. *Helvering*, 293 U.S. 465 (1935) ; *United States* v. *Cumberland Public Service Co.*, 338 U.S. 451 (1950). A taxpayer is also free to choose any form of organization which achieves a desired business or tax result. *Interior Securities Corp.*, 38 T.C. 330, 338 (1962) ; *Polak's Frutal Works, Inc.*, 21 T.C. 953 (1954). However, the existence of an entity may be disregarded if it was created for no purpose other than the minimization of taxes. *Moline Properties* v. *Commissioner*, 319 U.S. 436 (1943) ; *Higgins* v. *Smith*, 308 U.S. 473 (1940). For the entity to be recognized, it either must be created for a business purpose or must carry on a business activity. *Gregory* v. *Helvering, supra; Moline Properties* v. *Commissioner, supra; Haas* v. *Commissioner*, 248 F. 2d 487 (C.A. 2, 1957), remanding a Memorandum Opinion of this Court; *Shaw Construction Co.*, 35 T.C. 1102 (1961), affd. 323 F. 2d 316 (C.A. 9, 1963) ; *Interior Securities Corp., supra; Polak's Frutal Works, Inc., supra.*

In *National Investors Corporation* v. *Hoey*, 144 F. 2d 466 (C.A. 2, 1944), the issue before the court was whether a so-called sale or exchange between a corporation and sole shareholder should be recognized for tax purposes. The court disregarded the transaction and stated at pages 467-468:

The gloss then put upon Higgins v. Smith, supra, was deliberate and is authoritative: it was that, whatever the purpose of organizing the corporation, "so long as that purpose is the equivalent of business activity or is followed by the carry-

ing on of business by the corporation, the corporation remains a separate taxable entity." 319 U.S. 439 * * *. That, as we understand it, is the same interpretation which was placed upon corporate reorganizations in Gregory v. Helvering, 293 U.S. 465 * * *, and which has sometimes been understood to contradict the doctrine that the motive to avoid taxation is never, as such, relevant. In fact it does not trench upon that doctrine; it merely declares that to be a separate jural person for purposes of taxation, a corporation must engage in some industrial, commercial, or other activity besides avoiding taxation : in other words, that the term "corporation" will be interpreted to mean a corporation which does some "business" in the ordinary meaning ; and that escaping taxation is not "business" in the ordinary meaning.

Similar principles are applicable to joint ventures. In connection with the definition of a "joint venture" for tax purposes, section 301.7701–3(a), Proced. & Admin. Regs., provides in part:

The term "partnership" is broader in scope than the common law meaning of partnership and may include groups not commonly called partnerships. Thus, the term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization *through or by means of which any business, financial operation, or venture is carried on,* and which is not a corporation or a trust or estate within the meaning of the Internal Revenue Code of 1954. A joint undertaking merely to share expenses is not a partnership. * * * [Emphasis supplied.]

In *Haas* v. *Commissioner, supra,* the respondent challenged the existence of a joint venture between a corporation and a taxpayer who managed the corporation which was owned by him and his family. Prior to the creation of the alleged joint venture, the corporation operated at a loss, and the taxpayer was required to advance operating funds. Under the terms of the joint venture, the taxpayer was to provide the working capital for the operation of the business, and profits were to be divided equally between him and the corporation. Losses were to be borne by the taxpayer and his wife. The Second Circuit held that the existence of a joint venture and the taxpayer's right to deduct the losses depended upon whether the agreement to shift the loss "effected any economic consequences to the business." On remand, we held that it did not, and accordingly, the joint venture was not recognized for purposes of taxation, and the taxpayer was denied a deduction. *Benjamin F. Haas,* 18 T.C.M. 401, 28 P–H Memo. T.C. par. 59,086 (1959). Compare *Interior Securities Corp., supra,* in which the existence of a partnership, created for valid business reasons, was recognized by the Court.

The facts of this case reveal quite clearly that the so-called joint venture served no business purpose. The petitioners, as shareholders of the corporation, were called upon to furnish additional funds for the continued operation of the corporation, and the joint venture was created merely for the purpose of attempting to establish a basis for the petitioners to claim a deduction for the funds furnished by them.

The agreement provided that they should share equally the deficit in the funds of the corporation. It said nothing about the sharing of profits, and although the parties argued over whether there was an implied agreement to share profits, there was no reason for the agreement to deal with such matter. If the corporation had become profitable, the petitioners would have shared in such profits as its shareholders, and there is no indication in the agreement that any profits were to be shared in any other manner. Moreover, there is no indication whatsoever that the joint venture was to conduct any business, and in fact, it did not conduct any business. It is clear that the only purpose for the arrangement was to enable the petitioners to claim a deduction for the additional capital contributed to the corporation. An arrangement by shareholders for this purpose is not the carrying on of business within the tests established by the cases such as *Moline Properties* v. *Commissioner*, 319 U.S. 436 (1943); *Gregory* v. *Helvering*, 293 U.S. 465 (1935); and *National Investors Corporation* v. *Hoey*, 144 F. 2d 466 (C.A. 2, 1944). Thus, we hold that a joint venture was not created for tax purposes.

The petitioners have also utterly failed to prove that they are entitled to deduct the payments as a rental expense. They have the burden of proving their right to any such deduction (Rule 142, Tax Court Rules of Practice and Procedure; *Biggs* v. *Commissioner*, 440 F. 2d 1, 4-5 (C.A. 6, 1971), affirming a Memorandum Opinion of this Court), and that burden they have failed to carry. We have no evidence as to the amount of space occupied by the petitioners' food businesses, as to whether such businesses shared the space equally so that they should share a rental expense equally, and as to whether the food businesses paid any other amounts as rental for the space occupied by them. Although the record contains a drawing of one of the two warehouses occupied by the food businesses of the petitioners, that drawing was not made to scale, did not purport to show the exact amount of space actually utilized by each company, and did not indicate the manner in which such space was used. Moreover, the amounts paid by the petitioners were determined by the amount of the corporation's loss, and the evidence is insufficient to indicate whether such an amount would constitute reasonable rental for space actually used. The petitioners argue that when the amount of the payment is added to the rental income received by the corporation from others and then divided by the number of months during which business was carried on and further divided by the space available for storage, the quotient amounts to the reasonable rental value per square foot of space in the warehouses owned by the corporation. However, much of the space in the buildings was not rented by the corporation, and the formula suggested by the petitioners has the effect of allocating the payments to

the unrented space which was not used by them. Finally, there is some indication that the food businesses of the petitioners may have been incorporated, and if so, any obligation for the payment of additional rent would have been a corporate obligation, not that of the individual petitioners. In view of these circumstances, we hold that the petitioners have failed to establish that they are entitled to deduct their payments as rental expenses.

*Decisions will be entered for the respondent.*