THEODORE S. EICHER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eicher v. Commissioner
Docket No. 1459-82.
United States Tax Court
T.C. Memo 1984-468; 1984 Tax Ct. Memo LEXIS 204; 48 T.C.M. (CCH) 1013; T.C.M. (RIA) 84468; September 4, 1984. Theodore S. Eicher, pro se. Carol A. Szczepanik, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and imposed additions to tax as follows: Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654(a)
1976
$10,225.00
$5,113.00
$381.00
1977
$16,310.00
$8,155.00
$582.00
1978
$23,379.00
$11,690.00
$747.00
1979
$18,330.00
9,165.00
763.00
*207 The issues for decision are (1) whether petitioner has unreported income in the amount determined by respondent for the years at issue; (2) whether petitioner is entitled to deductions for trade or business expenses under section 162(a) in excess of the amounts allowed by respondent; (3) whether petitioner is liable for self-employment taxes undr section 1401; (4) whether any part of the undrpayment for each of the years at issue was due to fraud; and (5) whether petitioner is liable for the addition to tax under section 6654(a) for underpayment of estimated tax for each of the years at issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Huron, Ohio, when he filed his petition in this case. Petitioner was employed as a sales representative by National Revenue Corporation ("NRC") during each of the years 1976 through 1979, inclusive. Petitioner's employment designation with NRC changed from area manager to regional manager during this period, but his employment responsibilities were essentially the same. These responsibilities *208 were to make personal sales and to recruit, train, and supervise additional sales personnel. In conjunction with his employment, petitioner executed three agreements with NRC. Each of these agreements provided, in pertinent part: That Representative is and will continue to be an independent Sales Representative and is not to be considered in any way subject to control by Company. Representative is not and is never to be an agent or employee of Company and shall have no power or authority to bind or obligate in any manner or for any purpose. The Company shall not furnish Representative with transportation, clerical or secretarial help, or office or desk space, expenses or advertising expenses; guarantee any amounts to him, or permit him to have a drawing account of any advance from the Company. Company shall have no right to and shall not require Representative to attend at any place or time for any purpose; to devote any particular time or hours to his business; to confine his activities to any particular type of customers; to follow schedules, routes or itineraries; to make collections of accounts or check credit standings. Petitioner did, in fact, open an office in 1977 *209 under the name of NRC in which he conducted business. In addition, the agreements with NRC provided for commission compensation based on actual sales, recruiting bonuses based on the number of representatives recruited, reimbursement to NRC based on a percentage of the commission or a fixed rate, and reimbursement to NRC by petitioner for enumerated expenses based on a percentage of such expenses. Petitioner did not maintain a checking account, nor did he maintain adequate books and records which might otherwise reflect his income and expenses from his business. Petitioner, a calendar year taxpayer, received Forms 1099 from NRC in each year at issue reflecting the following compensation: Year
Commissions
Prizes
1976
$29,637.29
$1,000,00
1977
$43,100.63
$ 258.90
1978
$55,748.09
$ 112.50
1979
$46,414.83
$ 618.75
Petitioner did not file Federal income tax returns or declarations of estimated Federal income tax for any of the years at issue, nor did he pay any portion of the Federal income tax liability or make any payments of estimated Federal income tax for any year at issue. Petitioner did file Federal income tax returns for years prior to 1976, *210 and was aware of his obligation to file Federal income tax returns in the years at issue. OPINION We must first consider petitioner's claim that respondent's determinations of petitioner's unreported income and deductions for the years 1976 through 1979 are in error. Respondent's determinations are presumptively correct and the burden of proof rests with petitioner. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). If petitioner can establish that some deductible expenditures have been made, absolute certainty is not required and the Court may approximate the allowable deductions "bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930). Petitioner has offered no evidence to support a finding that he received income from NRC in an amount less than that determined by respondent. Petitioner, in fact, testifed that he did not know whether he received the amounts listed on the Forms 1099 which were introduced into evidence. Moreover, petitioner introduced *211 no evidence to support a finding that he had deductions in excess of those allowed by respondent in his determinations. [2] Although it is possible that petitioner had additional expenses related to his trade or business which were not included in respondent's determinations petitioner offered absolutely no information from which such deductions could be reasonable estimated. [3] Therefore, we cannot apply the rule of Cohan v. Commissioner to approximate petitioner's expenses. *212 On the basis of this record, we find that petitioner has failed to satisfy his burden of overcoming the presumptive correctness of respondent's determinations of petitioner's unreported income and deductions for the years 1976 through 1979. [4]
We must next consider whether petitioner is liable for the self-employment taxes under section 1401. Section 1401 provides, in pertinent part: (a) OLD-AGE, SURVIVORS, and DISABILITY INSURANCE - In addition to other taxes, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax * * * *213 * * * (b) HOSPITAL INSURANCE - In addition to the tax imposed by the preceding subsection, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax * * * Generally, "employees" are not subject to the imposition of the self-employment taxes. Section 1402 (c)(2). The term "employee" for purposes of imposition of the self-employment taxes in section 1401 is defined in section 3121(d). Sec. 1402(d). Section 3121(d), in pertinent part, defines an "employee" as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." Sec. 3121(d)(2). One definition of the common law status of "employee" is found in section 220 of 1 Restatement of Agency 2d which provides: A servant [employee] is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control. The crucial distinction between an employee and an independent contractor *214 is that the independent contractor retains control over the manner of performing the service for which the agreement is made. 1 Restatement of Agency 2d, Sec. 220, comment (e), p. 487 (1957). Whether an employee-employer relationship exists is a question of fact. Simpson v. Commissioner,64 T.C. 974, 984 (1975); Ellison v. Commissioner,55 T.C. 142, 152 (1970). Among the relevant factors considered by this Court and others are: (1) The degree of control exercised by the principal over the details of the work, (2) which party invests in the facilities used in the work, (3) the opportunity of the individual for profit or loss, (4) whether or not the principal has the right to discharge the indivudual, (5) whether the work is part of the principal's regular business, (6) the permanency of the relationship, and (7) the relationship the parties believe they are creating. Simpson v. Commissioner,supra at 984-985. Petitioner argues that he was an employee of NRC and not an independent contractor. We do not agree. The agreements *215 which petitioner executed with NRC clearly designated petitioner as an independent contractor. In order to fulfill the terms of these agreements, petitioner was to obtain his own working facilities and hire and compensate his own office personnel. Petitioner did, in fact, open an office in 1977. In addition, petitioner had significant control over the profitability and conduct of the business. All of these factors indicate that petitioner was an independent contractor. In concluding that petitioner was an independent contractor and not an employee, we have considered the fact that the relationship between petitioner and NRC could be terminated at any time. However, in light of the other enumerated factors this consideration does not affect our conclusion. We have also considered petitioner's contention that NRC controlled his business activities. Petitioner offered only his own self-serving testimony, without any substantiation, as evidence of the degree of control exercised by NRC. Petitioner's testimony was contradicted by the testimony of Kenneth Monnett, vice-president of NRC, who stated that petitioner's duties were to sell and to "get other people to sell" and that the *216 manner in which this was to be done was merely suggested by NRC. Petitioner's testimony is also contradicted by the terms of the agreements he executed with NRC. Consequently, we cannot find petitioner's testimony relating to the degree to which NRC controlled his business activities as fact. On the basis of this record we find that petitioner has failed to show that he is not liable for the self-employment taxes under section 1401. We must next consider whether any part of the underpayment for each of the years at issue was due to fraud. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner,79 T.C. 888, 930 (1982). The burden of proving fraud is on respondent. Section 7454(a); Rule 142(b). Respondent must affirmatively establish by clear and convincing evidence that some part of the deficiency for each year was due to fraud. Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); Gemma v. Commissioner,46 T.C. 821, 834 (1966). Respondent may meet his burden *217 of proving fraud through circumstantial evidence. Biggs v. Commissioner,440 F.2d 1, 5 (6th Cir. 1971); Stephenson v. Commissioner,79 T.C. 995, 1005, 1006 (1982); Gajewski v. Commissioner,67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Proof of failure to file returns, alone, does not establish fraud. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). However, a pattern of nonfiling coupled with some "convincing affirmative indication" of the requisite specific intent to defraud is sufficient to establish fraud. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969). Here, there are indicia of fraud in addition to petitioner's failure to file Federal income tax returns for the years at issue. Petitioner was aware of his obligation to file returns and filed returns for prior years. Petitioner stated that he did not file returns for the years at issue because his recordkeeping was poor and he did not want to file fraudulent returns. [5] It is apparent from the record that *218 petitioner operated a business which would necessitate at least a rudimentary recordkeeping system, and yet he failed to maintain any records from which the income or loss from his business could be determined. Petitioner's explanation as to why he did not file his Federal income tax returns for the years at issue is simply not credible considering the fact that he claims he initially advanced this explanation on February 21, 1979, approximately two years after the date on which his Federal income tax return for 1976 should have been filed under section 6072(a), and that he failed to make any efforts to obtain the information necessary to compute his income for the years at issue up to and through the date of the trial of this case. In addition, the testimony of Robert McConnell, ("McConnell") Special Agent with the Criminal Division of the Internal Revenue Service, provides a clear picture of fraud. McConnell testified that a criminal investigation was instituted against petitioner for his 1976 and 1977 Federal income tax liability and that this investigation *219 was initiated because of information received from an informant that petitioner had "bragged about not paying his taxes" and because of a subsequent referral from respondent's collection division. McConnell held a conference with petitioner on August 9, 1979. McConnell testified that during the conference petitioner stated that he was self-employed during 1976 and 1977 and that "on occasion he might mow a lawn or something like that." McConnell also testified that petitioner would not explain his relationship to NRC. The record in this case establishes that petitioner was, in fact, an independent contractor for NRC during 1976 and 1977. Petitioner declined to cross-examine McConnell as to his testimony or to offer an explanation as to petitioner's evasive conduct during the conference. The natural inference which must be drawn from petitioner's failure to elicit further evidence relating to his conduct during the conference with McConnell is that any evidence which could be so produced would not be favorable to him. Witchita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioner's failure *220 to file any Federal income tax returns for the years at issue considered in light of his knowledge of the requirement that returns were required, his failure to maintain adequate books and records, his failure to make any efforts to obtain the information necessary to determine his income for the years at issue, and his false statements and evasive conduct during the conference with McConnell amply support a finding of fraud. Finally, we must consider the issue of whether petitioner is liable for the addition to tax under section 6654(a). Section 6654(a) provides, in pertinent part: In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 and the tax under chapter 2 for the taxable year an amount determined at an annual rate established under section 6621 upon the amount of the underpayment * * * for the period of the underpayment * * * The taxes withheld on wages are deemed to be payments of estimated tax for purposes of applying section 6654. The addition to tax under section 6654(a) is *221 mandatory unless petitioner is within one of the computational exceptions of section 6654(d). Grosshandler v. Commissioner,supra at 20-21. Extenuating circumstances are irrelevant. Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960). Petitioner did not make any estimated payments for years 1976 through 1979, nor were taxes withheld from his wages. Petitioner has not otherwise shown that he is within one of the enumerated exceptions of section 6654(d), and on the basis of this record respondent's determination as to the additions to tax under 6654(a) must be sustained. We have considered petitioner's other arguments and find them unpersuasive. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner did submit a receipt for a room in the amount of $17.12 from the Holiday Inn of Youngstown, Ohio, dated November 13, 1976, and a receipt for a security deposit in the amount of $675.00 from A. J. Lepri. Petitioner testified that the receipt from the Holiday Inn was used as a piece of "scrap" paper on which he wrote the names of persons interviewed and hired in New York. Petitioner did not testify that the expenditure listed on the receipt was related to his trade or business activities, and consequently the receipt is not relevant for the purpose of proving that petitioner is entitled to additional deductions for his trade or business activities. The receipt for the security deposit is relevant to prove that petitioner did make rental payments relating to his trade or business. However, the receipt is not proof that petitioner's expenditures for rent are in excess of those allowed by respondent. ↩
3. Petitioner was given the opportunity to produce his books and records both during his discussions with respondent's agents and at the trial of this case. In addition, petitioner was informed of the opportunity to subpoena records in the possession of third parties under Rule 147(b) at the calendar call of this case on February 28, 1983. At the trial of this case ten days later, petitioner had apparently not availed himself of the subpoena process nor had he otherwise made any attempts to produce books or records to support deductions in excess of those permitted by respondent.↩
4. Petitioner also argues that NRC should have withheld taxes on the amounts paid to him. Even assuming that petitioner was an employee, NRC's failure to withhold does not effect the result in this case. Where an employer does withhold taxes from an employee's wages, the employee is entitled to a credit against the tax imposed under sec. 31(a)(1). Here, there were no amounts withheld, and petitioner is not entitled to a credit against the tax. Withholding does not otherwise effect an employee's tax liability.↩
5. Petitioner believed that filing a false return was a felony, but that failure to file a return was only a misdemeanor.↩