JOHN E. BERTOLI AND FRANCES BERTOLI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13648–92.        Filed October 24, 1994.

*Frank J. Crupi,* for petitioners.

*Susan G. Lewis, Brendan G. King,* and *Guy G. Lavignera,* for respondent.

OPINION

NIMS, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes for the taxable years 1986 and 1987 in the amounts of $195,221 and $9,041, respectively. Respondent further determined additions to tax for 1986 and 1987 under sections 6661 and 6653(a)(1)(A) and (B). Additionally, respondent determined an addition to tax for 1986 under section 6651(a)(1).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to Rule 121 respondent has filed respondent's motion for partial summary judgment (motion) seeking "partial summary judgment in respondent's favor, with respect to facts established under the doctrine of collateral estoppel." Rule 121(b) provides in pertinent part that

A decision shall thereafter be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. A partial summary adjudication may be made which does not dispose of all the issues in the case.

The additions to tax determined by respondent are not the subject of respondent's motion.

In her motion, respondent asks that petitioners be collaterally estopped from litigating the following factual determinations made by the Trial Division of the New Jersey Superior Court (trial court):

(1) John E. Bertoli was a party to the trial court action;

(2) Rutherford Construction Co. (RCC) was a "sham" created for the purpose of defrauding creditors;

(3) the alleged promissory note for $112,037 and the alleged assumption of Door Openings Corp.'s (DOC) liability on the convertible debentures were not bona fide debts;

(4) John E. Bertoli was not the true owner of any interest in RCC; and

(5) the transfer of DOC's assets to RCC was not in the ordinary course of business and was made for inadequate consideration.

Petitioners are John E. Bertoli and Frances Bertoli, husband and wife (hereinafter references to petitioner in the singular are to John E. Bertoli). Petitioners resided in North Bergen, New Jersey, at the time their petition was filed. The events underlying this case are not new to litigation—two New Jersey State courts and four Federal courts have previously addressed various aspects of these events. Therefore, before addressing the appropriateness of respondent's motion, a detailed description of the events is required.

## Background

Petitioner and his brother, Richard O. Bertoli (Richard), were principal shareholders in SYS Industries, Inc., a Bertoli family holding company. SYS Industries held a majority interest in DOC, a publicly held New Jersey corporation. DOC owned real property and a subcontracting business engaged in the installation of doors and door frames. Petitioner managed DOC's operating business.

Prior to the events in question, Richard was president of Executive Securities Corp. (ESC), a securities brokerage firm. While president of ESC, Richard apparently committed fraudulent acts involving the misuse of clients' funds which ultimately led to ESC's financial demise. As a consequence, on February 14, 1975, the U.S. District Court for the Southern District of New York placed ESC in liquidation and appointed Cameron F. MacRae III (MacRae) trustee. After MacRae was appointed trustee, he brought suit on behalf of ESC alleging that 3 months after the company shut down, Richard fraudulently transferred personal and corporate assets in an effort to put them beyond the reach of creditors, whose claims exceeded $2 million. The principal defendants originally named in that action were Richard Bertoli, SYS Industries, DOC, and John Bertoli, who was named as defendant in three capacities: individually, as custodian under New Jersey law for Richard's three minor children, and as the sole general partner of RCC, a New Jersey limited partnership. Prior to trial, a settlement was reached in which petitioner, in his individual capacity only, and DOC were released as defend-

ants. Petitioner remained before the court, however, in his capacity as the general partner of RCC and as custodian for Richard's children.

After a lengthy trial in which petitioner testified, the trial court found that Richard had transferred both personal assets and DOC's assets to RCC in order to defraud ESC's creditors and shareholders. DOC's operating business was transferred to Door Openings Corp. of New Jersey (DOC/NJ), a newly formed corporation in which RCC was the sole shareholder. The trial court's accompanying opinion described in detail the numerous and intricate indirect transfers used by the defendants Richard and petitioner that "systematically stripped a number of entities in which Richard had a substantial direct or indirect interest of all their valuable assets." *Executive Sec. Corp. v. Bertoli,* No. C–5088–79 (N.J. Super. Ct., Feb. 23, 1983) (slip op. at 4). The opinion noted further that all of the assets were effectively conveyed to one transferee, RCC, "formed at the time of the transfers and obviously for the express purpose of being the transferee." *Id.* at 5. RCC was made up of petitioner, the general partner, and Richard's three minor children, the limited partners.

Devoting an entire section of the opinion to petitioner's participation and entitling it "John's Fraud", the trial court proceeded to explain that the systematic nature of the transfer plan established "that John was an informed participant in his brother's plan," and thus that "the fraud was equally attributable to the debtor, Richard, and to the transferee, John." *Id.* at 9–10. In an attempt to justify the transfers, petitioner and Richard asserted that the transfers were supported by adequate consideration. In return for assets conservatively valued by the trial court at over $1 million, Richard and petitioner asserted that petitioner issued a promissory note in the amount of $112,037 payable to DOC. Thereafter, RCC assumed the note issued by petitioner to DOC. Richard and petitioner asserted that to furnish additional consideration RCC and/or petitioner assumed $412,200 of outstanding convertible debentures issued by DOC plus accrued interest in the amount of $26,002.

The trial court held that RCC and/or petitioner never had any intention of honoring the debenture assumption; thus, it did not represent a genuine debt. Additionally, the trial court held that the alleged consideration was "woefully inad-

equate". *Id.* at 11. Finally, the trial court explicitly addressed, and rejected, the Bertolis' attempts to justify the transactions as being in good faith, commenting that the various facets of their story were "a fiction", "absurd", "unconvincing", and "immeasurably complicated by the numerous gaps and contradictions in the Bertolis' account of the disputed transaction". *Id.* at 13, 15. Based on the above, the trial court entered judgment:

(a) retraining [sic] John Bertoli individually and as custodian of Richard's minor children from disposing of any property of RCC or DOC/NJ, and

(b) appointing a receiver for all of the property of RCC and DOC/NJ with authority to convey to the plaintiff [ESC's trustee] any or all of the said property to the extent necessary to satisfy the claims of ESC, its shareholders, customers and creditors once those claims have matured.
[*Id.* at 17.]

Subsequently, petitioner appealed to the Appellate Division of the Superior Court and petitioned for certification to the Supreme Court of New Jersey (which was denied), claiming that the trial court's judgment against him was void because it bound him in his individual capacity even though the pretrial settlement established that he was not a party to the State court proceeding in that capacity. Although the Appellate Division agreed that the judgment could only touch petitioner "in his capacity as custodian and the person in control of Rutherford and Door Openings", *Executive Sec. Corp. v. Bertoli,* No. A–3164–82T2 (N.J. Super. Ct. App. Div., May 22, 1984) (per curiam) (slip op. at 5), it nonetheless concluded that there was no fatal infirmity in the trial court's judgment since the limitation on petitioner's activities would be identical whether the judgment were - worded to enjoin him individually or as a custodian. The New Jersey Supreme Court denied a petition for certification. *Executive Sec. Corp. v. Bertoli,* 97 N.J. 701, 483 A.2d 210 (1984).

From the New Jersey State court system, this entangled matter moved to the U.S. bankruptcy court. On October 11, 1983, petitioner, on behalf of RCC, filed a voluntary petition under chapter 11 of the Bankruptcy Code. At a deposition taken during the bankruptcy proceedings, petitioner testified that he filed the petition in an attempt to protect the rights of the debenture holders of former DOC, who he believed were endangered by the trial court's restraining order. Petitioner

alleged in RCC's bankruptcy proceedings that RCC, by its assumption of DOC's outstanding debentures, was responsible for satisfying the rights of the debenture holders. MacRae filed, as an interested party, a motion to dismiss the bankruptcy proceedings. MacRae alleged that petitioner had filed the bankruptcy petition as a means by which to avoid the execution of the restraining order issued by the trial court.

The bankruptcy court granted MacRae's motion to dismiss. The bankruptcy judge concluded that under res judicata the restraining order was entitled to be treated as a final judgment. The court further held that petitioner filed the bankruptcy petition in bad faith as an attempt to avoid the execution of the trial court's judgment.

On the same day that petitioner filed a bankruptcy petition on behalf of RCC, a petition on behalf of Richard's own estate was filed for chapter 11 reorganization. In order to have another bite at the same apple, on April 1, 1985, petitioner instituted an adversary proceeding in bankruptcy court against Bernard J. D'Avella (D'Avella), the chapter 11 trustee of Richard's estate. The purpose of that suit was to establish that petitioner individually had some enforceable rights to the property in Richard's estate. In making this claim, petitioner asked that the judgment of the trial court be ignored as void because it enjoined him in his individual capacity from receiving or disposing of any of that property.

The trustee of Richard's estate filed a motion to dismiss petitioner's complaint on the grounds of res judicata and collateral estoppel. On August 15, 1985, the bankruptcy court in Richard's bankruptcy proceeding denied the trustee's motion to dismiss, accepting petitioner's argument that since he was not a participant in the State court litigation in his individual capacity, he was not bound by its judgment. The trustee filed an interlocutory appeal, and the U.S. District Court for the District of New Jersey reversed the bankruptcy court and ordered that the trustee's motion to dismiss be granted. *In re Bertoli*, 58 Bankr. 992 (D.N.J. 1986). The District Court's decision was affirmed by the Court of Appeals for the Third Circuit. *In re Bertoli*, 812 F.2d 136 (3d Cir. 1987).

As a result of the restraining order issued by the trial court, petitioner decided to write down the book value of RCC's assets from $641,425 to zero as of December 31, 1983.

From this, petitioners claim that RCC sustained substantial losses in 1983. Of these alleged losses, petitioners deducted $80,483 and $45,049 on their respective 1984 and 1985 returns. The period of limitations on the assessment of tax for the taxable years 1984 and 1985 has expired, and the allowance of these deductions for those years is not at issue in this case. However, it appears that petitioners' taxable income in 1984 and 1985 was not sufficient to absorb such large losses; thus, petitioners carried forward the losses to their 1986 and 1987 returns in the amounts of $458,447 and $25,703.19 respectively. The allowance of these losses carried forward is the subject of petitioners' case in this Court.

## Discussion

Respondent, as the moving party, bears the burden of proving that there is no genuine issue as to any material fact. *Jacklin v. Commissioner,* 79 T.C. 340, 344 (1982); *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982). "Collateral estoppel * * * [has] the dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation." *Meier v. Commissioner,* 91 T.C. 273, 282 (1988).

In *In re Bertoli,* 58 Bankr. 992, 995 (D.N.J. 1986), affd. 812 F.2d 136 (3d Cir. 1987), the U.S. District Court noted that "There is no dispute here that a state court adjudication may bind the parties to a federal action, including one instituted in the bankruptcy court. See C. Wright, A. Miller & E. Cooper, 18 Federal Practice and Procedure sec. 4468." Similarly, there is no such dispute here, nor, we think, could there be, and we proceed upon the premise that in appropriate circumstances a State court holding may form the basis for collateral estoppel in the Tax Court.

As regards Federal tax litigation, in *Peck v. Commissioner,* 90 T.C. 162, 166 (1988), affd. 904 F.2d 525 (9th Cir. 1990), we determined that collateral estoppel applies in the context of a factual dispute only when the following conditions are satisfied:

(1) The issue in the second suit must be identical in all respects with the one decided in the first suit.

(2) There must be a final judgment rendered by a court of competent jurisdiction.

(3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.

(4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.

(5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation.

[Citations omitted.]

Initially, we shall respond to an argument advanced repeatedly by petitioners in response to respondent's five requests. Petitioners argue that there are significant differences between the issues raised in the earlier State and Federal proceedings and the issues presently before this Court; namely, that the prior litigation focused on the fraudulent actions of Richard and not petitioners' Federal tax liability. We have previously held, however, that collateral estoppel focuses on the identity of issues, not the identity of legal proceedings. In *Meier v. Commissioner, supra* at 286, we held that collateral estoppel may be applied to issues of fact or law previously litigated even though the claims differ. Therefore, so long as identity of issues is present and the other requirements of *Peck v. Commissioner, supra,* are satisfied, petitioners' argument does not bar the application of collateral estoppel to issues previously decided by the State and Federal courts, even though petitioners' tax liability was not there involved.

In order to determine whether the offensive use of collateral estoppel premised on a State court proceeding may be used in Federal court, reference is made to the controlling State law. 28 U.S.C. sec. 1738 (1988); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–482 (1982). In New Jersey, the use of offensive collateral estoppel has been sanctioned. See *Allesandra v. Gross,* 453 A.2d 904 (N.J. Super. Ct. App. Div. 1982).

As to the application of collateral estoppel to each of respondent's five requests, we shall discuss each request separately.

1. *John E. Bertoli Was a Party to the New Jersey Superior Court Action*

Respondent asserts that petitioner was a party to the New Jersey State court action in his capacity as the general partner of RCC and the custodian for the three minor limited

partners. On the other hand, petitioner asserts that he did not have a full and fair opportunity to litigate the issues in the State court action because of the significant differences in the nature and purpose of the State proceeding and this proceeding.

Petitioner's argument is by no means new; in fact this same argument was raised before the Appellate Division of the New Jersey Superior Court, two Federal bankruptcy courts, a U.S. District Court, and the Court of Appeals for the Third Circuit. The common thread running through the Appellate Division's decision and all the Federal courts' decisions is the conclusion that petitioner was significantly involved in the action before the trial court in his capacity both as custodian for Richard's children's interests and as the general partner of RCC. This conclusion was perhaps best stated by the U.S. District Court for the District of New Jersey when it stated:

The Superior Court's opinion makes clear that John Bertoli's participation in the litigation was central. Indeed, his practical control of the progress of that litigation was so significant that it would in no way be unfair to preclude him from having a second day in court to relitigate questions identical to those already decided. * * * John Bertoli's absence from the case in his individual capacity might give the court pause if Mr. Bertoli's individual interests conflicted in some way with his responsibilities as a custodian and general partner. Here, however, there was no such conflict. Whether Mr. Bertoli wore his individual or his custodial hat, his interest was in persuading the court of the same thing: that the allegedly fraudulent transfers to Rutherford, the partnership of which he was the sole general partner, were actually in good faith and for a reasonable consideration. Given this, it cannot be said that Mr. Bertoli lacked either the motivation or the opportunity to present the court with all the facts it needed to know in order to determine whether he should be denied the right to acquire or transfer any interest in the property involved. [*In re Bertoli*, 58 Bankr. at 996.]

In short, petitioner, as the custodian of the interests of Richard's children in RCC, had a full and fair opportunity to litigate the validity of the asset transfers to RCC. Richard's children allegedly had a 50-percent interest in RCC. Petitioner, as custodian of their interests, was represented by counsel. Without the DOC assets, RCC would be a worthless entity and the children would own nothing. Likewise, petitioner allegedly owned the other 50-percent interest in RCC. Petitioner had the same alleged interest as the children, and

we safely assume that as their custodian and uncle he would have as vigorously represented their interests as he would his own.

The Court of Appeals for the Third Circuit (to which an appeal in this case would lie) has held that "When one has been given the opportunity to fully present his case in a court and the contested issue is decided against him, 'he may not later renew the litigation in another court.'" *Purter v. Heckler,* 771 F.2d 682, 690 (3d Cir. 1985) (citation omitted). We believe, in light of the extensive prior litigation of this issue in both State and Federal court, that any attempt by petitioner to argue that he did not have a full and fair opportunity to litigate the issues before the trial court would be without merit. Therefore, we hold that petitioners are estopped from denying that petitioner was a party to the trial court proceedings.

## 2. RCC Was a "Sham" Created To Defraud Creditors

Respondent requests that petitioners be collaterally estopped from denying that RCC was a "sham" created to defraud Richard's creditors. Resolution of this request hinges primarily on the first of the five requirements outlined in *Peck v. Commissioner,* 90 T.C. 162 (1988), that the previously litigated issue must be identical in all respects with the issue presently before the court. This requirement is well ingrained. See *Montana v. United States,* 440 U.S. 147, 153 (1979); *Commissioner v. Sunnen,* 333 U.S. 591, 599–600 (1948). Respondent asserts that there is "complete identity of factual issues" between the present tax dispute and the New Jersey State proceedings. Petitioners argue that identity of issues is lacking because John did not have a full and fair opportunity to litigate the issues in the earlier proceedings and because the focus of the earlier proceedings was on his brother Richard.

Respondent's second request is ambiguous and susceptible to two possible interpretations: (1) Petitioners should be estopped from asserting that RCC is a partnership for Federal tax purposes; or (2) petitioners should be estopped from asserting that RCC was created for a business purpose. A decision as to each possible interpretation could produce vastly different results in this case. Thus, in order to ensure

proper resolution of this issue, we shall address both possible interpretations.

### a. *The Existence of a Partnership for Federal Tax Purposes*

Although the trial court characterized RCC as a "sham", such characterization was used to bolster a decision under New Jersey State law to set aside conveyances determined to be made with the intent to defraud creditors. The issue before the trial court was whether Richard and/or John caused DOC to transfer its assets to RCC in an attempt to defraud Richard's creditors. On the other hand, whether RCC was a "sham" for purposes of allowing flow-through losses to John is a different issue.

It is well settled that "The labels applied to a transaction for purposes of State law are not binding for Federal tax purposes." *Long v. Commissioner,* 77 T.C. 1045, 1064 (1981) (citing *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967); *Morgan v. Commissioner,* 309 U.S. 78, 81 (1940)); see also *Madison Gas & Elec. Co. v. Commissioner,* 72 T.C. 521, 560 n.11 (1979), affd. 633 F.2d 512 (7th Cir. 1980); *Luna v. Commissioner,* 42 T.C. 1067, 1077 (1964). By itself, the trial court's decision in the initial State proceeding cannot establish that RCC is not a valid partnership for Federal tax purposes.

As to whether a corporation will be respected as a separate taxable entity, the Supreme Court in *Moline Properties v. Commissioner,* 319 U.S. 436, 438–439 (1943), announced:

> The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain advantage under the law of the state of incorporation *or to avoid or to comply with the demands of creditors* or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * [Fn. refs. omitted; emphasis added.]

In *Campbell County State Bank, Inc. v. Commissioner,* 37 T.C. 430, 441 (1961), revd. on other grounds 311 F.2d 374 (8th Cir. 1963), we held that the principles announced in *Moline Properties v. Commissioner, supra,* applied to whether a partnership will be recognized for Federal tax purposes. When called upon to determine whether or not a particular entity (i.e., a partnership) will be recognized for tax purposes,

the courts subsequent to *Moline Properties* have used a two-prong test—the entity (1) must be created for a business purpose, *or* (2) must carry on a business activity. See *Hagist Ranch, Inc. v. Commissioner,* 295 F.2d 351 (7th Cir. 1961), affg. T.C. Memo. 1960–206; *O'Neill v. Commissioner,* 271 F.2d 44, 49 (9th Cir. 1959), affg. T.C. Memo. 1957–193; *Jackson v. Commissioner,* 233 F.2d 289 (2d Cir. 1956), affg. 24 T.C. 1 (1955); *Paymer v. Commissioner,* 150 F.2d 334 (2d Cir. 1945), affg. in part and revg. in part a Memorandum Opinion of this Court; *Lomas Santa Fe, Inc. v. Commissioner,* 74 T.C. 662, 674 (1980), affd. 693 F.2d 71 (9th Cir. 1982); *Cooper v. Commissioner,* 61 T.C. 599, 602 (1974); *Shaw Constr. Co. v. Commissioner,* 35 T.C. 1102, 1114 (1961), affd. 323 F.2d 316 (9th Cir. 1963); *Aldon Homes, Inc. v. Commissioner,* 33 T.C. 582, 597 (1959).

In *Paymer v. Commissioner, supra,* Paymer Bros. was a partnership that owned rental real property. One of the brother partners was a cosigner on a note and a guarantor of an account that were both overdue. Fearing that potential creditors would attach partnership property, the brothers caused the partnership to transfer all of its realty to two newly formed corporations: Raymep Realty Corp., Inc. (Raymep), and Westrich Realty Corp. (Westrich). During the 1938 taxable year, the brothers managed the properties conveyed to the corporations, collected the rents, deposited the rents into a bank account held by the partnership, and otherwise used the profits as they pleased. For the 1938 taxable year, it appeared that Westrich engaged in no business activity after receiving title to the rental property from the partnership. Raymep's only apparent activity consisted of obtaining a $50,000 loan and as security for the loan Raymep assigned to the lender all of its rights as lessor in two leases on the property held by it.

For the 1938 taxable year of both corporations the Commissioner sought to tax the properties' rental income to the corporations. The Paymer brothers asked this Court to disregard both corporations as mere "dummies" and attribute the rental income directly to Paymer Bros. (the partnership). This Court refused to disregard either corporation. See *Paymer v. Commissioner,* a Memorandum Opinion of this Court dated Jan. 2, 1943. On appeal, the Court of Appeals for the Second Circuit determined that

Westrich, however, was at all times but a passive dummy which did nothing but take and hold the title to the real estate conveyed to it. It served no business purpose in connection with the property and was intended to serve only as a blind to deter the creditors of one of the partners. It was but a sham to be disregarded for tax purposes. [*Paymer v. Commissioner*, 150 F.2d at 337.]

However, as to Raymep, the court stated that

We think that Raymep was active enough to justify holding that it did engage in business in 1938. The absence of books, records and offices and the failure to hold corporate meetings are not decisive on that question. Though Raymep was organized *solely to deter creditors* of one of the partners, it apparently was impossible or impracticable to use it solely for that purpose when it became necessary or desirable to secure the above mentioned loan in a substantial amount. * * * [*Id.* at 336–337; emphasis added.]

Thus, the court refused to disregard Raymep as a separate taxable entity.

We believe that *Paymer* is analogous to the issue presently before the Court. For purposes of analogy, we further believe that had a State court, under the facts in Paymer, invalidated the conveyances after the activities in 1938 on the grounds that they were made with the intent to defraud potential creditors, the Court of Appeals for the Second Circuit would not have reached a different result. The reason for such a belief is that Raymep, prior to such an invalidation by a State court, would have engaged in business activities in 1938.

In the present case, in order to properly rule on the issue of the separate existence of RCC for Federal tax purposes, we would need to determine the extent, if any, of the business activities conducted by RCC subsequent to the transfer of assets from DOC. At this stage of the proceedings, the Court is without such information. The extent, if any, of such activities constitutes a material triable issue of fact.

Respondent, in support of her assertion that identity of issues exists on the sham issue, relies extensively on *Meier v. Commissioner*, 91 T.C. 273 (1988). However, respondent's reliance on *Meier* is misplaced. The taxpayer in *Meier* was employed by Hughes Tool Co. (Hughes) in a fiduciary capacity to acquire silver mining claims on behalf of his employer. The taxpayer through coconspirators successfully engaged in a scheme whereby silver mining claims were acquired and

then resold to Hughes at grossly inflated prices. For each sale a portion of the sale proceeds was diverted to the taxpayer for his benefit and personal use. When Hughes became aware of the conspiracy, it filed an action for an accounting in Federal District Court against the taxpayer and his coconspirators. The District Court held in favor of Hughes and in granting an accounting, determined precisely how much funds were diverted to the taxpayer.

Meanwhile, the taxpayer in *Meier* did not report any of the income he had received from the silver mining claims scheme. The respondent determined a deficiency in the taxpayers' returns for the years at issue. The taxpayers petitioned this Court to redetermine the deficiencies. We held that the taxpayer should be collaterally estopped from denying the amount of income determined by the District Court that he had diverted for his benefit from his employer. In support of our holding we noted that "In a suit in accounting in equity * * * the defendant [must] account for all money or property of the plaintiff that has come into his hands." *Id.* at 287 (citations omitted). Thus, the issue as to how much income the taxpayer had diverted for his benefit was identical in both the accounting proceeding before the District Court and the determined deficiency from nonreporting of income before this Court.

The fact that there was identity of issues in *Meier* is uncontestable. However, the bare assertion by respondent that this case is very similar to *Meier* without any supporting analysis does not automatically render the issue before the trial court and the issue presently before this Court identical, and we hold that there is insufficient identity on the sham issue to support collateral estoppel.

At any trial of this case on the merits, respondent remains free to assert the sham issue de novo, and the burden will remain on petitioners to prove otherwise. Rule 142(a).

b. *The Purpose for Which RCC Was Created*

As to the second possible interpretation of respondent's request, the Court holds that petitioners are estopped from asserting that RCC was created for a business purpose. The trial court expressly decided that RCC was created solely for the purpose of receiving DOC's assets to defraud Richard's creditors. This is not a sufficient business purpose which,

standing alone, would support the viability of RCC as carry-ing on a business activity.

As to the existence of a partnership for Federal tax pur-poses, the first prong of the test inquires into whether there was a business purpose for creating the entity. For this pur-pose there is sufficient identity of issues between the State court proceedings and the present tax dispute. As established previously, petitioner was a party to the trial court's proceed-ings. The trial court's determination of the parties' intent was necessary to set aside the conveyances as fraudulent. Further, a review of the trial court's written opinion estab-lishes that the issue was fully and actually litigated. Lastly, there are no new material facts as to the purpose for which RCC was created.

### 3. *The Alleged Promissory Note for $112,037 to DOC and the Alleged Assumption of DOC's Convertible Debentures Were Not Bona Fide Debts*

Essentially, disposition of this case centers around the issue as to whether RCC sustained a loss in 1983 as a result of the trial court's order placing RCC's assets into a receiver-ship. As to the issue of whether RCC sustained a loss, it is necessary to determine whether or not the alleged note issued by petitioner and the alleged assumption of DOC's debentures were genuine debts for purposes of being included in RCC's basis in its assets placed into receivership.

Under section 1001(a) a taxpayer realizes a loss from the sale or *other disposition* of property when the taxpayer's basis, as determined under section 1011, exceeds the tax-payer's amount realized. Under section 1011(a) the basis in property for determining gain or loss is equal to the tax-payer's cost of the property, as determined under section 1012, adjusted as provided in section 1016. Ordinarily, a pur-chaser's cost basis under section 1012 includes both promis-sory notes issued by the purchaser and any liabilities of the seller assumed by the purchaser as consideration for the sale. See *Crane v. Commissioner,* 331 U.S. 1 (1947). However, for debt, whether arising by issuance of a note or assumption of liabilities, to be included in the purchaser's basis, it must be genuine indebtedness. See *Estate of Franklin v. Commis-*

*sioner,* 544 F.2d 1045, 1049 (9th Cir. 1976), affg. 64 T.C. 752 (1975); *Bussing v. Commissioner,* 89 T.C. 1050 (1987).

In the present case, petitioners claim that RCC sustained a loss as a result of the trial court's order placing RCC's assets into a receivership. Assuming, without deciding, that the placing of RCC's assets into a receivership constitutes an "other disposition" of property within the meaning of section 1001(a), it is necessary to determine both RCC's basis in its assets and its amount realized in order to determine whether a loss was realized.

Petitioners claim that RCC's basis in its assets includes both the assumption by RCC and/or petitioner of DOC's debentures and the face value of the $112,037 note issued by petitioner and assumed by RCC. The trial court held that "the debentures * * * did not constitute a liability which RCC, or John Bertoli, actually assumed and intended to honor." *Executive Sec. Corp. v. Bertoli,* No. C–5088–79 (N.J. Super. Ct., Feb. 23, 1983) (slip op. at 13). If this Court may rely upon such factual determination, petitioners are collaterally estopped from asserting that RCC's basis in its assets included the alleged debenture assumption.

All the requirements for the application of collateral estoppel, as outlined in *Peck v. Commissioner,* 90 T.C. 162 (1988), are satisfied. The New Jersey trial court's decision was a final judgment. It was affirmed by the Appellate Division of the New Jersey Superior Court, and a petition for certification to the New Jersey Supreme Court was denied. A factual determination by the New Jersey trial court as to the validity of the debenture assumption is identical to the determination which would have to be made by this Court, were we to consider the question de novo. In both the trial court and this Court the focus is on whether RCC and/or petitioner was in fact responsible for repayment of the debentures.

As already mentioned, petitioner was a party and had a full and fair opportunity to litigate the debt assumption issue before the trial court. Further, a review of the opinion rendered by the trial court establishes that the issue was actually and fully litigated and necessary to support the court's order. Petitioner and Richard asserted before the trial court that the debenture assumption provided adequate consideration for the assets transferred. The trial court expressly considered and refuted this assertion.

Lastly, the controlling facts and applicable legal rules have remained unchanged since the trial court's decision. Therefore, we hold that petitioners are collaterally estopped from asserting that the debenture assumption represented genuine indebtedness of either RCC or petitioner. Therefore, it follows that RCC's basis in its assets did not include the debenture assumption.

We reject petitioners' argument that controlling new facts present in this case bar application of collateral estoppel as to the validity of the debenture assumption. Petitioners claim that in 1992 the DOC debentures became due and several debenture holders have demanded payment from petitioner and/or RCC. According to petitioner, one such debenture holder has even filed suit demanding payment and naming petitioner as a defendant. However, these are not *material* new facts. The critical issue for both our purposes and the trial court's purposes is whether petitioner intended to honor the debentures at the time they were allegedly assumed in 1975. Demands for repayment (including a lawsuit 17 years later) do not retroactively furnish petitioner with the requisite intent to honor repayment in 1975.

As to the validity of the $112,037 note issued by petitioner and assumed by RCC, a review of the written opinion rendered by the trial court establishes that the trial court did not determine whether the note amounted to genuine debt. The trial court's written opinion is silent as to the validity of the note, except for the conclusion that the "alleged consideration was woefully inadequate." *Executive Sec. Corp. v. Bertoli,* No. C–5088–79 (N.J. Super. Ct., Feb. 23, 1983) (slip op. at 11). However, the determination as to whether RCC and/or petitioner is entitled to basis for the face amount of the note is different from a determination that the amount of the note was inadequate consideration in the context of a fraudulent conveyance. As a result, petitioners are not collaterally estopped from litigating the validity of the note.

### 4. *John E. Bertoli Was Not the True Owner of Any Interest in RCC*

Resolution of this request hinges primarily on the requirement in *Peck v. Commissioner, supra,* that the previously determined issue was actually litigated and necessary to the

court's final judgment. Specifically, in its written opinion, the trial court stated that "In my view, the children paid nothing and Richard is the true beneficial owner of both their interest and John's." *Executive Sec. Corp. v. Bertoli, supra* (slip op. at 8). Petitioners argue that the trial court's reference to the ownership of John's interest in RCC was not essential to support its decision. On the other hand, respondent argues that the fact that the trial court's opinion addresses the point establishes that the issue was litigated before the trial court. Notably, respondent does not refute petitioners' contention that the determination was not essential to the trial court's decision. Rather, respondent argues only that the trial court's determination that DOC's assets were transferred to RCC in an attempt to defraud Richard's creditors was essential to support its decision.

As is the requirement of identity of issues, the actually litigated and necessary issue requirement is also well ingrained. See *Montana v. United States,* 440 U.S. 147, 153 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n.5 (1979); *Allbritton Communications Co. v. NLRB,* 766 F.2d 812, 820 (3d Cir. 1985). "Necessarily decided" has been defined as necessary to support the decision. *Marlene Indus. Corp. v. NLRB,* 712 F.2d 1011, 1015–1016 (6th Cir. 1983). Further, it has been stated that

"'It is basic to the law of [issue preclusion] that a finding in one proceeding cannot bind tribunals in subsequent cases unless the finding acted as a basis for final judgment in the first.' 'The determination of an issue in an earlier proceeding must be essential to the judgment; it cannot be dicta.'" * * * [*NLRB v. Master Slack and/or Master Trousers,* 773 F.2d 77, 81–82 (6th Cir. 1985); citations omitted.]

An analysis of the trial court's written opinion demonstrates that its decision was based on a finding that Richard and John acted with fraudulent intent when they caused DOC to transfer its assets to RCC. Specifically, the trial court stated:

For several centuries, courts of equity dealing with creditors' pursuit of assets have recognized that there are certain facts which bespeak fraud. They are indicia or "badges of fraud." Find them, or some of them, and you have found a fraudulent transfer.

Most reported cases point to one or two "badges" as being sufficient. Here, the indicia are present in super abundance. From the foregoing, it is clear that:

(a) the Bertolis acted in the face of a pending suit;

(b) the "sale" of DOC's property was not in the ordinary course of business and involved substantially all of the entity's assets;

(c) the alleged consideration was woefully inadequate;

(d) measured by his "probable liability," N.J.S.A. 25:2–8, Richard was insolvent at the time of the transfer, and

(e) there was a family relationship between Richard and the transferees; [*Executive Sec. Corp. v. Bertoli, supra* (slip op. at 11); citations omitted.]

Based on the above "badges of fraud", the trial court determined that under New Jersey law a prima facie case for fraud had been established. Thus, the trial court shifted the burden to the defendants to offer proof that there was no fraud.

The defendants responded essentially by proffering four arguments: (1) The debenture assumptions by RCC were valid and served as adequate consideration; (2) there was no disparity between the value of the assets transferred and the consideration paid; (3) the transfers were approved by DOC's disinterested board and ratified by its shareholders; and (4) the transfers were legitimate because there were no objections from DOC's shareholders.

From the State court proceeding, we conclude that the issue as to the "true ownership" of John's interest in RCC was not actually and fully litigated before the trial court. Further, because the trial court's decision was based on a finding of actual intent to defraud as evidenced by the five badges of fraud, the conclusion that Richard owned John's interest was not necessary or essential to the decision. Rather, the trial court's statement that Richard was the true owner of John's interest in RCC appears to have been dicta. Thus, petitioners will not be estopped from asserting that John owned an interest in RCC.

5. *The Transfer of DOC's Assets to RCC Was Not in the Ordinary Course of Business and Was Made for Inadequate Consideration*

As to the issues of whether the transfer of DOC's assets was in its ordinary course of business and whether the transfers were supported by adequate consideration, we conclude that these issues were necessarily decided and were actually and fully litigated before the trial court. This conclusion is evident from the fact that these determinations were found by

the trial court to be two of the badges of fraud supporting its decision to set aside the conveyances as fraudulent, and we so hold.

To reflect the foregoing,

*An appropriate order will be issued.*